# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36493

STATE OF IDAHO,                               )
                                              )          Boise, February 2010 Term
    Plaintiff-Respondent,            )
                                              )          2010 Opinion No. 89
v.                                            )
                                              )          Filed: July 27, 2010
COREY SEAN FREDERICK,                         )
                                              )          Stephen Kenyon, Clerk
    Defendant-Appellant             )

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Juneal C. Kerrick, District Judge.

The decision of the district court denying the motion to suppress is <u>reversed</u> and the case is <u>remanded</u> for further proceedings.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Eric D. Fredericksen argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

HORTON, Justice

This case arises out of a district court's denial of Corey Sean Frederick's motion to suppress evidence seized during a search of his automobile after he was arrested on a warrant for failure to appear in court. Frederick entered a conditional plea of guilty to possession of methamphetamine and timely appealed the denial of his suppression motion to the Idaho Court of Appeals. That court affirmed the district court. We granted Frederick's petition for review and now reverse the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not in dispute. On November 9, 2005, Parma, Idaho, Police Officer Christopher Cullen was attempting to serve some outstanding arrest warrants from Wilder, Idaho, as part of a mutual aid agreement between the two cities. Wilder Officer Dustin Tveidt advised Officer Cullen that he suspected that a nearby white pickup truck belonged to Frederick, one of the individuals for whom there was an outstanding Wilder warrant.

Officer Cullen was travelling in his patrol car towards the Jackson's convenience store to refill his mug of soda when the white pickup in question passed him. Officer Cullen followed the pickup, which was also headed towards the Jackson's. The white pickup pulled into the Jackson's parking lot and parked, and the driver got out of the truck. Officer Cullen also pulled into the parking lot, parking 20 feet away from the truck. Before the driver of the truck shut the door to his vehicle, but after he was outside of his vehicle and walking toward the front of the Jackson's store, Officer Cullen, standing next to his patrol car, called out the name "Mr. Frederick." The driver of the truck turned around and said "yes." Officer Cullen asked the driver if he was "Corey Sean Frederick," to which the driver replied "yes." Officer Cullen asked Frederick to approach him and, as Frederick complied, Officer Cullen explained he had a warrant for Frederick's arrest. Officer Cullen arrested Frederick, handcuffed him, and seated him in the back seat of his patrol car.

Officer Cullen then went to the pickup and "cleared" the cab to make sure that it was safe to bring his canine drug detection partner into the vehicle to search. Officer Cullen then had his canine partner search around the exterior of the truck. The dog then went into the cab and immediately "sat," indicating that it had detected the odor of drugs. Officer Cullen then pointed to individual objects in the cab, including a shaving kit on the passenger seat and a pen tube on the floor. The dog reacted to both items in a fashion which indicated the presence of drugs. Officer Cullen ultimately located a substance that tested positive for methamphetamine.

Frederick brought a motion to suppress the drug evidence seized from his vehicle pursuant to Article I, Sections 13 and 17 of the Constitution of the State of Idaho and under the Fourth and Fourteenth Amendments to the Constitution of the United States of America. The district court denied the motion, first in an oral ruling and later in a written order. In an unpublished opinion, the Idaho Court of Appeals affirmed.[1]

Frederick filed a petition for review and on May 5, 2008, filed a motion to stay appellate proceedings until after the Supreme Court of the United States rendered a decision in *Arizona v. Gant*, 128 S.Ct. 1443 (Feb. 25, 2008). We granted the stay, and on April 21, 2009, the Supreme Court issued *Arizona v. Gant*, 556 U.S. ___, 129 S.Ct. 1710 (2009). We then granted Frederick's petition for review.

---

[1] The decision of the Court of Appeals was released more than a year earlier than the decision in *Arizona v. Gant*, 556 U.S.___, 129 S.Ct. 1710 (2009).

Frederick asserts that the search of his truck was illegal under *Gant* and that thus we should reverse the district court's denial of his motion to suppress. The State concedes that the search was illegal, but asks us to apply a "good faith" exception to the rule that evidence seized pursuant to an illegal search must be excluded.

## II. STANDARD OF REVIEW

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007).[2] In reviewing a district court order granting or denying a motion to suppress evidence, the standard of review is bifurcated. *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005). This Court will accept the trial court's findings of fact unless they are clearly erroneous. *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007). However, this Court freely reviews the trial court's application of constitutional principles in light of the facts found. *Id.*

## III. ANALYSIS

While the State does not address the issue in its briefing on petition for review, in its initial appellate briefing the State argued that Frederick failed to preserve his claims under both the state and federal constitutions. We first examine these arguments. Next, we address whether the search of Frederick's truck violated the Fourth Amendment under *Gant*. Finally, we consider whether we should, as the State urges, apply a "good faith" exception to the exclusionary rule and uphold the denial of Frederick's motion to suppress.

**A. Although Frederick has preserved his claim under the Fourth and Fourteenth Amendments, he has failed to preserve his state constitutional claim.**

The State asserts that before the district court, with respect to the federal constitution, Frederick's suppression motion was "based solely on his contention that because the officer did not 'contact' him while he was still in his vehicle, a search under [*Belton*] was not warranted," while his argument on appeal is that "[*Belton*] should be limited to searches where the officer has reason to believe the automobile contains evidence related to the crime for which the defendant was arrested." The State is incorrect on both counts.

It is true that much of Frederick's argument below focused on the fact that Officer Cullen did not make contact with Frederick until he was already outside of his car. Frederick also

---

[2] At the time of its decision, the court of appeals did not have the benefit of the *Gant* decision. The court of appeals decided this case in reliance on our previous decisions in *State v. Charpentier*, 131 Idaho 649, 962 P.2d 1033 (2004), and *State v. Watts*, 142 Idaho 230, 127 P.3d 133 (2005).

argued, however, that the search was illegal under *Belton* due to the fact that the search was not justified by concern that Frederick would grab a weapon or reach into his truck and destroy evidence. Counsel for Frederick argued:

> The right to search the vehicle comes from . . . the right to search the wingspan, the person, the lunge area incident to arrest, to search their person, to search their wingspan. Other courts have called it their lunge area. That's what the courts have the authority to do.
> The right to search the vehicle comes from that authority. It comes from the right to search the wingspan, the person, the lunge area incident to arrest. And over the years, it's evolved to become a right to search the entire interior compartment of a vehicle.

Contrary to the State's assertion, Frederick renewed this argument on appeal: "[T]he evidence obtained following a search of Mr. Frederick's car, should have been suppressed [because] . . . [a]t the time of the search, Mr. Frederick was handcuffed and locked in the back of Officer Cullen's patrol car." In sum, Frederick argued below that the search was illegal under the federal constitution because it was not justified by concerns about safety or the possible destruction of evidence. Thus, the issue was preserved, and Frederick properly renewed it on appeal.[3]

The State is correct, however, that Frederick has failed to preserve his argument that the search violated the state constitution. Frederick's motion to suppress did assert that the search of his truck violated "Article I, Sections 13 and 17 of the Constitution of the State of Idaho." However, in his argument before the district court, Frederick made no mention of the state constitution. Frederick did make explicit reference to two Idaho cases, *State v. Foster*, 127 Idaho 723, 905 P.2d 1032 (Ct. App. 1995), and *State v. Harris*, 130 Idaho 444, 942 P.2d 568 (Ct. App. 1997), but neither of these cases mention the state constitution. Finally, the district court did not mention the state constitution in its oral ruling and only noted it in passing in its written order. Thus, Frederick's argument on appeal that the state constitution affords greater protection than the Fourth Amendment is not preserved. *State v. Wheaton*, 121 Idaho 404, 406-407, 825 P.2d 501, 503-04 (1992) (declining to consider whether the state constitution afforded the defendant greater protection from a warrantless search than the federal constitution because, though he

---

[3] Frederick argues for the first time on appeal that the search was not justified as a search for evidence of the crime for which he was arrested, i.e., failure to appear. This argument is made in apparent response to the holding in *Gant* that police may search a vehicle incident to a recent occupant's arrest if "it is reasonable to believe the vehicle contains evidence of the offense" for which the arrest was made. 556 U.S. at___, 129 S.Ct. at 1723. In our view, *Gant* represented a significant departure from previous decisions of the United States Supreme Court regarding the scope of searches that are constitutionally permissible incident to arrest. In light of this significant change in Fourth Amendment jurisprudence, we decline to apply the usual rule that issues raised for the first time on appeal will not be considered. However, we will not address this issue further because the State does not assert that a search for evidence of Frederick's failure to appear justifies the warrantless search.

mentioned it in his motion, defendant failed to further clarify his state constitutional argument to the district court).

**B. The search of Frederick's car violated the Fourth and Fourteenth Amendments as interpreted in *Gant*.**

As stated, Frederick asserts that because he had been handcuffed and placed in the back of the patrol car at the time Officer Cullen and his canine partner searched his truck, he could not have posed a danger that he would either reach for a weapon or destroy evidence, and thus the search did not fall within the "search incident to arrest" exception to the warrant requirement as recently defined in *Gant*. The State concedes that under *Gant*, the search was indeed illegal.

Prior to the release of *Gant*, the district court in its written order denying Frederick's motion to suppress relied upon *New York v. Belton*, 453 U.S. 454 (1981), and *Thornton v. United States*, 541 U.S. 615 (2004), to hold that the search did fall within the "search incident to arrest" exception. While the Fourth Amendment generally requires a warrant in order to conduct a search, there are certain exigencies that excuse compliance with the warrant requirement. *Belton*, 453 U.S. at 457. Specifically, the Supreme Court in *Chimel v. California*, 395 U.S. 752 (1969), held that a lawful custodial arrest creates a situation which justifies a contemporaneous search without a warrant of the person arrested and the immediately surrounding area because of the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape" and the need to prevent the concealment or destruction of evidence. *Id.* at 763. In *Belton*, the Court noted that the scope of this exception to the warrant requirement as described in *Chimel* was difficult for law enforcement officers to apply in cases involving the lawful arrest of the occupants of an automobile. *Belton*, 453 U.S. at 459. Thus, the *Belton* Court, in an apparent attempt to create a bright-line rule, held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460 (footnotes omitted).

In *Thornton*, the Supreme Court considered whether the rule from *Belton* applies even when an officer first makes contact with the person arrested after that person has left the vehicle. In that case, police began to follow a car driven by Thornton because it did not have valid license tags, but before officers could pull him over, Thornton drove into a parking lot, parked, and exited the car. *Thornton*, 541 U.S. at 617-18. An officer then "accosted" Thornton, patted him down, and discovered illegal drugs on his person. *Id.* at 618. The officer arrested Thornton,

handcuffed him, and placed him in the back of the patrol car. *Id.* The officer then searched Thornton's car and discovered a handgun. *Id.* A jury convicted Thornton of federal drug and weapons charges, and he appealed, challenging the district court's denial of his motion to suppress the firearm as the fruit of an unconstitutional search. *Id.* The Court upheld the search as valid, stating that an officer may search the passenger compartment of a car incident to the lawful arrest of one of its occupants or of a recent occupant who has a "temporal or spatial relationship to the car at the time of the arrest and search," and that that relationship "does not turn on whether [the arrestee] was inside or outside the car at the moment that the officer first initiated contact with him." *Id.* at 622.

In *Gant*, the Supreme Court revisited the rule from *Belton*. The Court first noted that its opinion in *Belton* has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility that the arrestee could gain access to the vehicle at the time of the search. A majority of the Court then held:

> Under this broad reading of *Belton*, a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search. To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." 453 U.S. [at 460, n.3]. Accordingly, we reject this reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.
>
> Although it does not follow from *Chimel*, we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Thornton*, 541 U.S. [at 632], (SCALIA, J., concurring in judgment). In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.
>
> Neither the possibility of access nor the likelihood of discovering offense-related evidence authorized the search in this case. Unlike in *Belton*, which involved a single officer confronted with four unsecured arrestees, the five officers in this case outnumbered the three arrestees, all of whom had been handcuffed and secured in separate patrol cars before the officers searched Gant's car. Under those circumstances, Gant clearly was not within reaching distance of his car at the time of the search. An evidentiary basis for the search was also

lacking in this case. Whereas Belton and Thornton were arrested for drug offenses, Gant was arrested for driving with a suspended license-an offense for which police could not expect to find evidence in the passenger compartment of Gant's car. Because police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable.

*Gant*, 556 U.S. at ___, 129 S.Ct. at 1719 (citations and footnotes omitted). The majority restated its holding thus:

Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Id.* at 1723-24.

In the instant case, Frederick was not within reaching distance of the passenger compartment of his truck at the time Officer Cullen searched it, nor was it reasonable to believe the truck contained evidence of the offense for which Frederick was arrested—failure to appear. Therefore, we hold that, pursuant to *Gant*, Officer Cullen's warrantless search of Frederick's truck was unreasonable and in violation of the Fourth Amendment.

**C. Both *Gant* and the exclusionary rule apply to Frederick's case.**

While the State concedes that it obtained the evidence used to convict Frederick in violation of his Fourth Amendment rights, and that generally the remedy mandated by the Fourth Amendment for such a violation is the exclusion of such evidence, it argues that this Court should extend the "good-faith" exception to the exclusionary rule to allow Frederick's conviction to stand.[4] Frederick argues that federal retroactivity doctrine requires the Court to apply *Gant* and the exclusionary rule to his case without exception.[5]

---

[4] The State has raised this argument for the first time on appeal. This Court has consistently held that "[t]his Court will not consider issues not raised in the court below." *Wheaton*, 121 Idaho at 407, 825 P.2d at 504. However, the central question presented to the trial court and on appeal is whether the search violated Frederick's constitutional right to be free from unreasonable searches. For the reasons stated in footnote 2, *supra*, we consider it unfair to require the parties to have anticipated the outcome of *Gant* when addressing this constitutional question.

[5] Frederick has also urged that *State v. Arregui*, 44 Idaho 43, 254 P. 788 (1927) (adopting the exclusionary rule), and *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992) (declining to adopt "good faith" exception to exclusionary rule), mandate against the adoption of an exception to exclusion in this case. Those cases, however, concerned the remedy for a violation of the Idaho Constitution which, as discussed in Part.III.A, *supra*, is not at issue in this case due to Frederick's failure to preserve his claims under it.

Generally, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). This rule dictates that we hold, as we have above, that, pursuant to *Gant*, Frederick's Fourth Amendment rights were violated by Officer Cullen's search of his truck. The question arises, however, as to whether this rule of retroactive application also dictates that we grant Frederick the remedy that the Supreme Court has prescribed for such a Fourth Amendment violation.

Usually, "all evidence obtained by searches and seizures in violation of the [Fourth Amendment] is, by that same authority, inadmissible in a state court." *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). However, the United States Supreme Court has held that there are exceptions to the exclusionary rule, for example: for "evidence obtained in objectively reasonable [good-faith] reliance on a subsequently invalidated search warrant," *United States v. Leon*, 468 U.S. 897, 922 (1984); or for evidence obtained pursuant to a warrant that was invalid because a judge forgot to make "clerical corrections," *Massachusetts v. Sheppard*, 468 U.S. 981, 991(1984); or for evidence obtained by police who acted in objectively reasonable reliance upon a statute authorizing warrantless administrative searches that was subsequently found to violate the Fourth Amendment, *Illinois v. Krull*, 480 U.S. 340, 356-57 (1987); or for evidence seized in violation of the Fourth Amendment where the erroneous information regarding the validity of the warrant resulted from clerical errors of court employees," *Arizona v. Evans*, 514 U.S. 1, 16 (1995); or, finally, for evidence obtained pursuant to a warrant that was later discovered to be invalid because it had been recalled without the recall being entered into a database due to a negligent police recordkeeping error. *Herring v. United States*, 555 U.S. ___, ___, 129 S.Ct. 695, 701 (2009).

The Supreme Court has yet to determine whether there is a "good faith" exception "for a search conducted under a then-prevailing interpretation of a Supreme Court ruling, but rendered unconstitutional by a subsequent Supreme Court ruling announced while the defendant's conviction was on direct review." *United States v. Gonzalez*, 578 F.3d 1130, 1132 (9th Cir. 2009). Certainly, a tension arises when a court extends to a defendant the benefit of retroactive application of a new rule of constitutional law and then removes that benefit by application of the "good faith" exception to the exclusionary rule.

Predictably, this tension has led to sharply divergent results from the courts that have considered this question. A number of courts have applied the exception, recognizing that there is a distinction between recognizing the constitutional violation and providing an appropriate remedy for the violation and concluding that the deterrent purpose underlying the exclusionary rule is not advanced when officers have relied on existing case law. *See People v. Henry*, ___ Cal. Rptr. 3d ___, 184 Cal. App.4th 1313 (Cal. App. 1 Dist. 2010); *United States v. Davis*, 598 F.3d 1259 (11th Cir. 2010); *State v. Baker*, 229 P.3d 650 (Utah 2010); *State v. Riley*, 225 P.3d 462 (Wash. App. Div. 1 2010); *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009); *United States v. Gray*, 2009 WL 4739740 (D. Neb. Dec. 7, 2009) (noting the Ninth, Seventh, and Sixth Circuits have refused to apply the good faith exception while the Fifth and Tenth Circuits have held *Leon's* good-faith exception applies to warrantless searches considered lawful under the case law existing when the search was performed); *Brown v. State*, 24 So.3d 671, 680-82 (Fla. App. 5th Dist. 2009).

Other courts have found the tension resulting from application of the good faith exception to be "untenable" and accordingly declined to apply the exception. *People v. McCarty*, 229 P.3d 1041 (Colo. 2010); *State v. Harris*, 224 P.3d 830 (Wash. App. Div. 2 2010); *United States v. Gonzalez*, 578 F.3d 1130 (9th Cir. 2009) *rehearing and rehearing* en banc *denied*, 598 F.3d 1095 (9th Cir. 2010).

Yet other courts have recognized that retroactivity rules do not automatically exclude application of the good faith exception, yet have declined to apply the exception because the scope of *Belton* was not sufficiently defined as to warrant a finding of objective good faith by the law enforcement officials conducting the search. The Court of Appeals for the District of Columbia concluded that the scope of permissible searches of automobiles was not "settled law" and therefore declined to apply *Leon*. *United States v. Debruhl*, 993 A.2d 571 (D.C. 2010). Similarly, the Michigan Court of Appeals declined to apply the exception in the context of the search of an automobile pursuant to the arrest of a passenger in the vehicle, finding the question of extension of *Belton* to such circumstances to be a question of first impression. *People v. Mungo*, 2010 WL 1461620 (Mich. App. Apr. 13, 2010).

It is our view that retroactivity rules do not preclude application of the good faith exception when an officer relies on case law. We note, however, that the Supreme Court has emphasized that the good faith described in *United States v. Leon* "must be objectively reasonable." 468 U.S. at 922. The burden of proving that such objectively reasonable good faith

reliance existed is on the State. *State v. Smith*, 144 Idaho 482, 485, 163 P.3d 1194, 1197 (2007) (holding that "[t]he burden of proof is on the state to show that the search . . . fell within one of the well-recognized exceptions to the warrant requirement.") In this case, the State has failed to meet that burden.

We first observe that Officer Cullen provided no testimony as to the reason why he searched the automobile, and we can only infer that he did so as a search incident to Frederick's arrest. Even assuming that Officer Cullen relied in good faith upon case law defining the search incident to arrest exception in order to search Frederick's truck, however, such reliance cannot be said to have been objectively reasonable. It is unclear from the record before us where Frederick was in relation to his truck at the time Officer Cullen first made contact with him. The Supreme Court's decision in *Thornton* illustrates that the bright-line test announced in *Belton* becomes less clear when law enforcement's initial contact with the arrestee occurs outside of the vehicle. *See also Foster*, 127 Idaho 723, 905 P.2d 1032. As noted above, *Thornton* held that an officer may search the passenger compartment of a car incident to the lawful arrest of a recent occupant who has a "temporal or spatial relationship to the car at the time of the arrest and search." 541 U.S. at 622. When police made initial contact with Thornton, "he was in 'close proximity, both temporally and spatially,' to his vehicle," *Thornton*, 541 U.S. at 622 n.2. By contrast, although we know that Frederick had not been outside of his truck for very long before Officer Cullen contacted him, we do not know the distance between Frederick and his truck at the time of contact. Nor has the State asked us to remand this matter for an evidentiary hearing. Without a complete picture of Frederick's relationship to his vehicle at the point of initial police contact, we are unable to determine whether Frederick was close enough to his truck to have brought Officer Cullen's search within the purview of the *Belton* rule as it existed at the time of the search.

For the foregoing reasons, we conclude that the State has failed to meet its burden of demonstrating that Officer Cullen acted in objectively reasonable good faith reliance on case law when he searched Frederick's truck. Therefore, the evidence seized from Frederick's vehicle must be suppressed.

## IV. CONCLUSION

While Frederick preserved his claims under the federal constitution, he failed to preserve his claims under the state constitution. The search of Frederick's car was illegal under *Gant* and

the fruits of that search must be suppressed.  Therefore, we reverse the district court's decision denying Frederick's motion to suppress and remand for further proceedings.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.