# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41458

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 6 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed:  February 12, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DUSTIN THOMAS ARMSTRONG, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Melissa Moody, District Judge.

Judgment of conviction for grand theft, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender, Boise, for appellant.  Maya P. Waldron, Deputy Public Defender, argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.  John C. McKinney argued.

_____

SCHROEDER, Judge  Pro Tem

Dustin Thomas Armstrong appeals from his judgment of conviction for grand theft.  He argues that the district court erred in denying his motion to suppress evidence obtained from a warrantless search of his vehicle executed by police officers at the request and direction of Armstrong's parole officer.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Armstrong was released on parole in 2012 following a period of incarceration resulting from his conviction for possession of a controlled substance and issuing a check without funds.  As a condition of parole, Armstrong agreed that he would "submit to a search of person or

property, to include residence and vehicle, at any time and place by any agent of Field and Community Services and s/he does waive constitutional right to be free from such searches."[1]

Armstrong's mother called police to report that Armstrong was in her home, possibly under the influence, and acting in a way that made her fear for her safety. An officer was dispatched to respond to the call. While en route, the officer called the Bureau of Probation and Parole hotline and was informed by the on-call parole officer that Armstrong was on parole. As the officer neared the mother's home, the officer observed Armstrong leaving the area in his vehicle. The officer briefly lost sight of Armstrong's vehicle, but later located it in a credit union parking lot. Other officers went into the credit union and asked to speak with Armstrong outside. Meanwhile, the responding officer again spoke with the on-call parole officer, who stated that, as a condition of parole, Armstrong had signed a Fourth Amendment waiver allowing search of his person and property, including his home and vehicle. Pursuant to that waiver, the parole officer requested that the police officer search Armstrong's vehicle. A drug dog was called in and performed an exterior sniff of the vehicle, with no alerts. The dog then searched the interior of the vehicle and alerted on a safe located behind the driver's seat. Although no controlled substances were found, it was subsequently determined that the safe belonged to Armstrong's mother and contained several personal and financial documents, including her checkbook.

Armstrong was charged with grand theft, I.C. §§ 18-2403(1) and 18-2407(1)(b). He filed a motion to suppress evidence obtained from the warrantless search of his vehicle. The district court initially granted the motion, agreeing with Armstrong's argument that the Fourth Amendment waiver pertained to searches by Probation and Parole agents, which the local police were not. As a result, the district court determined that the scope of the search exceeded what was permitted by the waiver. The state filed a motion to reconsider, contending that, under the plain language of the waiver and under the dictionary definition of "agent," any police officer acting under the direction of a parole officer was acting as an agent of Probation and Parole. The district court agreed, granted the motion for reconsideration, and denied Armstrong's motion to suppress the evidence obtained during the search of his vehicle.

---

[1] Field and Community Services was the prior name for what is currently known as the Bureau of Probation and Parole. The Bureau is under the direction and control of the Board of Correction.

Armstrong pled guilty to grand theft, reserving his right to appeal the denial of his motion to suppress. The district court sentenced Armstrong to a unified term of three years, with a minimum period of confinement of one year. Armstrong appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Armstrong asserts that the district court erred in denying his motion to suppress based on its conclusion that the local police officers were agents of the Board of Correction. Specifically, he claims that the Board's constitutional duty to control, direct, and manage parole and parolees pursuant to Article X, Section 5 of the Idaho Constitution may not be delegated to any entity. That duty includes searches of parolees pursuant to Fourth Amendment waivers. He contends that a parole officer may not delegate the performance of such a search to any other entity, including local police. As a result, local police cannot be considered agents of the Board for purposes of performance of a search pursuant to a Fourth Amendment waiver. According to Armstrong, because the parole officer delegated the Board's duty to perform such a search to the local police, the search exceeded the scope of Armstrong's Fourth Amendment waiver, making the search unreasonable and a violation of the Fourth Amendment.

The state argues that Armstrong did not raise the constitutional argument in the district court and, therefore, failed to preserve it for appeal. The state also argues that the district court correctly determined that local law enforcement could act as agents of Probation and Parole in assisting with a parole-instigated search consistent with the terms of Armstrong's Fourth

Amendment waiver. Alternatively, the state contends that the search was supported by reasonable grounds to believe that Armstrong had violated the terms of his parole.

## A. Preservation of Issue for Appeal

The threshold issue is whether Armstrong preserved for appeal the argument that the parole officer could not delegate the Board's duty to supervise parole and parolees, under Article X, Section 5 of the Idaho Constitution, to local law enforcement.

Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Johnson*, 148 Idaho 664, 670, 227 P.3d 918, 924 (2010).[2] Issues not raised below generally may not be considered for the first time on appeal. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated or the basis of the objection must be apparent from the context. I.R.E. 103(a)(1); *State v. Sheahan*, 139 Idaho 267, 277, 77 P.3d 956, 966 (2003).

Although Armstrong preserved for appeal the general objection to the search and argument that the search exceeded the scope of his Fourth Amendment waiver, he cannot argue more grounds for that challenge than were argued before the district court. *See State v. Frederick*, 149 Idaho 509, 513, 236 P.3d 1269, 1273 (2010) (stating that the defendant failed to preserve an argument for suppression of evidence under the state constitution because it was not raised below); *State v. Wheaton*, 121 Idaho 404, 406-07, 825 P.2d 501, 503-04 (1992) (declining to consider whether the state constitution afforded the defendant greater protection from a warrantless search than the federal constitution because, though he mentioned it in his motion, defendant failed to further clarify his state constitutional argument to the district court). An objection on one ground will not preserve for appeal a separate and different basis for objection

---

[2] The rationale for this rule was first stated by the Supreme Court of the Territory of Idaho in 1867:

> It is for the protection of inferior courts. It is manifestly unfair for a party to go into court and slumber, as it were, on [a] defense, take no exception to the ruling, present no point for the attention of the court, and seek to present [the] defense, that was never mooted before, to the judgment of the appellate court. Such a practice would destroy the purpose of an appeal and make the supreme court one for deciding questions of law in the first instance.

*Smith v. Sterling*, 1 Idaho 128, 131 (1867).

not raised before the trial court. *State v. Higgins*, 122 Idaho 590, 597, 836 P.2d 536, 543 (1992); *State v. Vondenkamp*, 141 Idaho 878, 885, 119 P.3d 653, 660 (Ct. App. 2005); *see also Frederick*, 149 Idaho at 513, 236 P.3d at 1273; *Wheaton*, 121 Idaho at 406-07, 825 P.2d at 503-04. Even when a defendant mentions the general basis for a motion to suppress, his or her arguments on appeal are limited by what was argued to the trial court. *See State v. Anderson*, 154 Idaho 703, 705-06, 302 P.3d 328, 330-31 (2012) (declining to address the issue of a drug dog's reliability raised for the first time on appeal when only the probable cause to search one area of the vehicle after the drug dog had previously alerted to another area was challenged below); *State v. Headley*, 130 Idaho 339, 340, 941 P.2d 311, 312 (1997) (declining to address a defendant's argument on appeal challenging the validity of an arrest based on whether a statute allowed for arrest instead of citation and release because the defendant had argued below only that the arrest and subsequent search were invalid for lack of probable cause); *State v. Babb*, 125 Idaho 934, 940, 877 P.2d 905, 911 (1994) (noting that denial of a motion in limine preserves for appeal an objection to evidence raised in the motion, but declining to address an argument on appeal that was not covered in the defendant's motion); *State v. Contreras-Gonzales*, 146 Idaho 41, 47, 190 P.3d 197, 203 (Ct. App. 2008) (declining to address the defendant's "much broader alleged foundational deficiency . . . asserted on appeal" than was asserted below). This ensures that the trial court has an opportunity to consider and resolve disputes at a time when the error can be prevented, mitigated, or cured. *See State v. Branigh*, 155 Idaho 404, 416, 313 P.3d 732, 744 (Ct. App. 2013); *State v. Adams*, 147 Idaho 857, 861, 216 P.3d 146, 150 (Ct. App. 2009).

Armstrong's state constitutional argument on appeal was not raised before the district court, thereby depriving the district court of an opportunity to address the argument in the first instance and rule accordingly. In his motion to suppress and at the suppression hearing, Armstrong argued only that the search had exceeded the scope of his Fourth Amendment waiver because it was conducted by police officers without his parole officer being present. This was based on his claim that, under the plain language of the waiver, local police were not agents of Probation and Parole. According to Armstrong, the language of his Fourth Amendment waiver limited his consent to being searched by actual employees of Probation and Parole. However, he did not mention the Idaho Constitution or make the specific argument that its separation of

powers provision prevented local police from acting as agents of Probation and Parole.[3] Armstrong may not allege to this Court that the district court's decision was in error based on an argument that was never presented to the district court for consideration. Appellate courts are forums of review, not decision in the first instance. Because Armstrong did not raise his constitutional argument before the district court, it was not preserved for appeal. However, because of the high likelihood that this issue will arise in the future, this Court will address it in the next section.

## B.     Article X, Section 5 of the Idaho Constitution

Even assuming that Armstrong preserved his constitutional argument for appeal, it is without merit. Armstrong argues that the duty to supervise parole and parolees was constitutionally entrusted to the Board. On this point, he is correct. Article X, Section 5 of the Idaho Constitution mandates the establishment of the state Board of Correction. It further provides that the Board "shall have the control, direction and management of . . . adult felony probation and parole." *Id.* The legislature implemented this constitutional directive by enacting I.C. §§ 20-201 to -249. *Mellinger v. Idaho Dep't of Corr.*, 114 Idaho 494, 499, 757 P.2d 1213, 1218 (Ct. App. 1988). The enabling acts of the legislature clarified that the Board is specifically charged with supervising parolees. I.C. § 20-219(1) (providing that the Board "shall be charged with the duty of supervising all persons convicted of a felony placed on probation or released from the state penitentiary on parole"); *State v. Diggie*, 140 Idaho 238, 240, 91 P.3d 1142, 1144 (Ct. App. 2004) ("The care, custody and control of persons convicted of crimes and sentenced to imprisonment is given to the executive branch of the Idaho state government, specifically to the State Board of Correction."). The enabling acts of the legislature involved no delegation of

---

[3]     Armstrong argues that his burden of production was met when he established, via the state's concession, that the search was conducted without a warrant. This shifted the burden to the state to establish that the search was pursuant to an established exception to the warrant requirement. *See State v. Holland*, 135 Idaho 159, 162, 15 P.3d 1167, 1170 (2000); *State v. Bottelson*, 102 Idaho 90, 92, 625 P.2d 1093, 1095 (1981). We agree. However, this does not mean that Armstrong was relieved of the requirements of preserving arguments for appeal, especially when the state asserted a prima facie case that an exception to the warrant requirement applied. Armstrong's constitutional argument was one that could have been raised below to counter the state's asserted exception, but was not; accordingly, it was not preserved for appeal. This did not impose an additional burden of proof upon him, as Armstrong contends, but instead required only what is required of all appellants--that they properly preserve issues and arguments for appeal by specifically raising them below.

legislative authority to the Board, as it ultimately derives its powers from Article X, Section 5 of the Idaho Constitution. *Mellinger*, 114 Idaho at 499, 757 P.2d at 1218.

From this, Armstrong argues that the Board's duty, which he claims includes execution of searches pursuant to Fourth Amendment waivers, is nondelegable. Thus, he maintains, the parole officer lacked the authority to delegate all or part of the Board's duty to supervise parole and parolees to any other entity, including other members of law enforcement. Armstrong's argument relies on an extension of the nondelegation doctrine for support.

The nondelegation doctrine was originally developed to prevent Congress from forsaking its duties. *Loving v. United States*, 517 U.S. 748, 758 (1996). Under the Idaho Constitution, the nondelegation doctrine applies to prevent delegations of the power vested in one branch of government to another branch of government. *See* IDAHO CONST. art. II, § 1 (providing that the powers of the government are divided into the legislative, executive, and judicial departments, and "no person or collection of persons charged with the exercise of powers *properly belonging to one of these departments shall exercise any powers properly belonging to either of the others*, except as in this constitution expressly directed or permitted") (emphasis added). Traditionally, this prohibition arises when it appears that the legislature has delegated part of its lawmaking authority to another branch of government. *See* IDAHO CONST. art. III, § 1 ("The legislative power of the state shall be vested in a senate and house of representatives."); *State v. Purcell*, 39 Idaho 642, 228 P. 796, 797 (1924) (stating that one of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority). Only when constitutionally entrusted decision-making authority is delegated to another branch of government will the nondelegation doctrine be implicated. *See, e.g.*, *State v. Kellogg*, 98 Idaho 541, 543, 568 P.2d 514, 516 (1977) (discussing the standards for determining "whether a *legislative delegation of decision making authority* is constitutionally proper") (emphasis added).

This case does not involve the delegation of decision-making authority from one governmental branch to another; indeed, this case does not involve *any* delegation of decision-making authority whatsoever. Performing a search is not equivalent to engaging in "the control, direction and management" of parole and parolees. Although performing parole searches is a part of that duty, it does not involve any decision-making authority if done at the request and under the direction of a parole officer. The police officers had no authority to engage in the

7

general supervision of Armstrong or his parole; the police officers could not determine whether the terms of parole were being complied with, file a report of parole violation, impose discretionary jail time, or enforce the terms of parole. The police officers merely acted under the direction of the parole officer for the specific, limited purpose of assisting with execution of a search authorized by the terms of Armstrong's parole. Thus, the police officers did not assume "the control, direction and management" of Armstrong's parole merely by engaging in a search of his vehicle at the request and direction of his parole officer.

We have previously held that, if a parole or probation officer is justified in making a search, he or she may enlist the aid of police officers in performing that duty. *State v. Peters*, 130 Idaho 960, 962, 950 P.2d 1299, 1301 (Ct. App. 1997); *State v. Pinson*, 104 Idaho 227, 233, 657 P.2d 1095, 1101 (Ct. App. 1983). Nothing precludes mutually beneficial cooperation between law enforcement officials and parole officers, including law enforcement assistance with a parole officer's request to perform a parole search. *State v. Cruz*, 144 Idaho 906, 910, 174 P.3d 876, 880 (Ct. App. 2007); *State v. Vega*, 110 Idaho 685, 688, 718 P.2d 598, 601 (Ct. App. 1986). The police involvement here constituted nothing more than assistance with the parole officer's request to perform a search. As a result, use of local law enforcement to execute the search of Armstrong's vehicle pursuant to his Fourth Amendment waiver was not an unconstitutional delegation of the Board's Article X, Section 5 duty to supervise parole and parolees. Thus, even if this argument had been preserved for appeal, it would have failed.

## C. Scope of Fourth Amendment Waiver

Finally, we address the argument that Armstrong originally made below--that, under the plain language of his Fourth Amendment waiver, law enforcement officers are not agents of Probation and Parole.[4] He contends that the search by local police without the presence of the parole officer who authorized the search exceeded the scope of his waiver, thereby rendering the search unreasonable.[5]

---

[4] At oral argument, Armstrong conceded that he was not challenging the district court's conclusion that local law enforcement could act as agents of Probation and Parole under the plain language of Armstrong's Fourth Amendment waiver. Nevertheless, we address this issue for the very reason that it was the actual basis for the district court's denial of Armstrong's motion to suppress and because it was addressed in the parties' briefing on appeal.

[5] Armstrong argues that the search in this case was invalid because it was performed by local police officers. However, in doing so, he notes that there was not a parole officer at the

The Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution guarantee the right of every citizen to be free from unreasonable searches and seizures. While a warrantless search is presumptively unreasonable, it will nevertheless be lawful if it falls within an established exception to the warrant requirement. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993); *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Garcia*, 143 Idaho 774, 777, 152 P.3d 645, 648 (Ct. App. 2006). Once a defendant has established that a warrantless search occurred, the state bears the burden of establishing that a valid exception applies. *State v. Hansen*, 151 Idaho 342, 346, 256 P.3d 750, 754 (2011); *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). A search conducted with consent that was freely given is such an exception. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). This exception encompasses Fourth Amendment waivers, which operate as consents to search, given as a condition of probation or parole. *State v. Purdum*, 147 Idaho 206, 208, 207 P.3d 182, 184 (2009); *State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987); *State v. Pecor*, 132 Idaho 359, 364, 972 P.2d 737, 742 (Ct. App. 1998).

When the basis for a search is consent, the search must conform to the limitations placed upon the right granted by the consent. *State v. Ballou*, 145 Idaho 840, 849, 186 P.3d 696, 705 (Ct. App. 2008); *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004). The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Ballou*, 145 Idaho at 849, 186 P.3d at 705; *Thorpe*, 141 Idaho at 154, 106 P.3d at 480.

In this case, the search did not exceed the scope of the consent contained in Armstrong's Fourth Amendment waiver, which allowed for search by any agent of Probation and Parole. The plain language of the waiver establishes that it was not limited to searches performed by a parole officer, as Armstrong alleges. Instead, "any agent" of Probation and Parole could perform the search. As previously noted, Probation and Parole may engage in mutually beneficial

---

scene during the search, although there presumably could have been. This indicates that his actual issue is not that the local police performed or participated in the search as agents of Probation and Parole, which they are allowed to do, but that it was not being directly overseen and supervised by a parole officer.

cooperation with law enforcement. *See Cruz*, 144 Idaho at 910, 174 P.3d at 880; *Vega*, 110 Idaho at 688, 718 P.2d at 601. Nothing precludes such cooperation from taking the form of a limited special agency relationship. Thus, the only question is whether local law enforcement acted as agents of Probation and Parole when performing the search under the direction of Armstrong's parole officer.

Black's Law Dictionary defines an agent as "[o]ne who is authorized to act for or in place of another; a representative." BLACK'S LAW DICTIONARY 72 (9th ed. 2009). The search here was performed by local police at the express request of Probation and Parole. The parole officer dictated the scope of the search within the parameters of Armstrong's Fourth Amendment waiver by requesting that the officers use a drug dog to search Armstrong's vehicle. Therefore, the local police performed the search at the request and under the supervision of the parole officer, acting as temporary, limited representatives of Probation and Parole. As noted by the district court, "this is the very definition of an agent."

The parole officer's physical absence during the search is immaterial; it did not change the agency relationship or affect the reasonableness of the search. Moreover, the state has a substantial interest in supervising probationers and parolees because they are more likely to commit future offenses. *Samson v. California*, 547 U.S. 843, 853 (2006); *see also Cruz*, 144 Idaho at 910, 174 P.3d at 880. The use of local law enforcement as special agents to perform individual searches of parolees at the request and under the direction of a parole officer furthers that interest. Requiring the physical presence of a parole officer at every search of a parolee would unreasonably burden and interfere with the state's interest in supervising and controlling parolees for their rehabilitation and for the protection of society. *See United States v. Richardson*, 849 F.2d 439, 442 (9th Cir. 1988). Accordingly, the search did not exceed the scope of Armstrong's Fourth Amendment waiver, and the district court did not err in denying Armstrong's motion to suppress on that basis.[6]

---

[6] Because we have concluded that the warrantless search of Armstrong's vehicle fell within the scope of his consent contained in his Fourth Amendment waiver, we need not address the state's alternative argument regarding whether the search was supported by reasonable grounds to believe that Armstrong had violated the terms of his parole.

10

## IV.

## CONCLUSION

By not raising it below, Armstrong failed to preserve for appeal his argument that the parole officer could not delegate the Board's constitutional duty to supervise parole and parolees to local law enforcement. However, even if he had preserved that argument, it was without merit, as no unconstitutional delegation of decision-making authority occurred. Finally, the search did not exceed the scope of Armstrong's Fourth Amendment waiver because local law enforcement acted as agents of Probation and Parole in executing the search at the request and direction of the parole officer. Accordingly, the district court did not err in denying Armstrong's motion to suppress, and Armstrong's judgment of conviction for grand theft is affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.