**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44007**

| | |
|---|---|
| STATE OF IDAHO, | ) 2016 Unpublished Opinion No. 822 |
| | ) |
| Plaintiff-Respondent, | ) Filed: December 23, 2016 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| MARTIN GUZMAN AMBRIZ, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Martin Guzman Ambriz appeals from his judgment of conviction for felony driving under the influence, arguing the district court erred by denying his motion to suppress. Ambriz argues the stop of his vehicle violated his Fourth Amendment rights because the officers did not have reasonable suspicion that Ambriz committed a traffic violation or that he was driving under the influence. Ambriz also asserts the State cannot raise for the first time on appeal the argument that Ambriz committed a traffic violation, thereby providing reasonable suspicion for the traffic stop. The State argues the officers had reasonable suspicion that Ambriz was driving under the influence because he drove off the roadway and made jerky, side-to-side movements within his lane of travel. Further, the State argues the officers had reasonable suspicion that Ambriz violated Idaho Code Sections 49-630(1) and 49-637(1), and thus the stop was legally justified. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Two officers observed Ambriz make a left-hand turn onto E. 16th Street in Burley, Idaho. One officer testified that when Ambriz "made that turn, [he] actually hit the gravel on the right-hand side of the road and then [he] came back onto the roadway." Although the meaning of the statement is unclear, the officer testified that both sides of the passenger-side tire went into the gravel. When Ambriz returned to the roadway, the officers followed Ambriz for several blocks and observed him make a proper right-hand turn. The second officer testified as Ambriz "made the right-hand turn, the vehicle like shook side to side and made like quick, jerky motions," but the vehicle did not leave its lane. The officers initiated a traffic stop because Ambriz "went off the road into the gravel, and then he kept doing the side-so-side [sic] jerk." The dashboard camera on the patrol car began recording after Ambriz drove into the gravel and returned to his lane.

Once the officers stopped Ambriz and made contact, both officers testified they recognized signs of impairment in Ambriz so they conducted field sobriety tests upon Ambriz. Ambriz failed the field sobriety tests. The officers then administered a breathalyzer test, which returned results of 0.209 and 0.195. Because Ambriz had previously been convicted for felony driving under the influence, the State charged Ambriz with felony driving under the influence in violation of I.C. §§ 18-8004 and 18-8005(6) and (9).

Ambriz filed a motion to suppress the evidence seized as a result of the traffic stop, arguing the stop violated his rights under the Fourth Amendment of the United States Constitution and under the Idaho Constitution. The district court denied Ambriz's motion to suppress, finding:

> As set forth above, the deputies testified that the Defendant drove in the gravel on the side of 16th Street and made quick, jerky movements within his lane on Pomerelle Avenue. This driving pattern was not within the broad range of normal driving behaviors. In considering the totality of the circumstances, the deputies had a reasonable suspicion that the vehicle was being driven contrary to traffic laws or that other criminal activity was afoot.

Pursuant to a plea agreement, Ambriz conditionally pleaded guilty to felony driving under the influence, reserving the right to appeal the district court's denial of his motion to suppress. The district court sentenced Ambriz to a unified term of seven years, with two years determinate, and retained jurisdiction. Ambriz timely appeals.

2

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Ambriz argues the officers did not have reasonable suspicion that Ambriz had committed a traffic violation or was driving under the influence because Ambriz's conduct was within the broad range of normal driving behavior.

**A.     The District Court Did Not Make Sufficient Findings of Fact for This Court to Determine Whether Ambriz Violated Idaho Code §§ 49-630(1) and 49-637(1)**

Ambriz contends because the State did not argue in district court that Ambriz committed a traffic violation, the State cannot raise this argument for the first time on appeal. Additionally, Ambriz argues the district court made no findings that Ambriz committed a traffic violation. The State argues Ambriz committed a traffic violation under I.C. §§ 49-630(1) and 49-637(1) by driving into the gravel on the side of the road. Although the State recognizes the district court did not point to a specific statute that Ambriz violated, the State argues under the totality of circumstances the officers had reasonable suspicion that Ambriz committed a traffic violation when his passenger-side tires left the roadway.

Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Johnson*, 148 Idaho 664, 670, 227 P.3d 918, 924 (2010). Issues not raised below generally may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). As such, the State cannot assert more reasons for reasonable suspicion on appeal than were argued before the district court. *See State v. Armstrong*, 158 Idaho 364, 368, 347 P.3d 1025, 1029 (Ct. App. 2015) (constitutional arguments not raised before lower courts are not preserved for appellate review). "An issue is different if it

3

is not substantially the same or does not sufficiently overlap with an issue raised before the trial court." *State v. Voss*, 152 Idaho 148, 150, 267 P.3d 735, 737 (Ct. App. 2011) (citing *State v. Sheahan*, 139 Idaho 267, 277-78, 77 P.3d 956, 966-67 (2003)).

The broad issue--whether the officers had reasonable suspicion to stop Ambriz--was raised both in the district court and in this Court. On appeal, however, the State asserts the officers had reasonable suspicion to stop Ambriz because Ambriz violated I.C. §§ 49-630(1) and 49-637(1). In the district court, the State did not argue that violating these specific statutes provided reasonable suspicion of a traffic violation. Therefore, the district court did not have an opportunity to determine whether Ambriz's driving behavior constituted a violation of I.C. §§ 49-630(1) and 49-637(1). At the motion to suppress hearing, the first officer testified as follows:

> Prosecutor: And why did you stop the vehicle?
> Officer One: Because [Ambriz] went off the road into the gravel, and then he kept doing the side-so-side [sic] jerk. So I thought we would go and initiate a traffic stop.

The second officer testified as follows:

> Prosecutor: So there was no violation of any traffic law other than this little shaking movement?
> Officer Two: The violation occurred prior to the camera activating when [Ambriz] left the roadway on 16th Street.

The district court found Ambriz drove into the gravel on the side of 16th Street and made quick, jerky movements within his lane of travel. The district court concluded these instances were not within the broad range of normal driving behaviors, and under the circumstances the officers had reasonable suspicion that Ambriz was driving contrary to traffic laws or that other criminal activity was afoot.

Here, the officers testified as to what behavior Ambriz exhibited that they believed violated a traffic statute. However, although the second officer mentioned that Ambriz committed a traffic violation, the officer did not specify by title or elements which statutes Ambriz violated. Without knowing the statutes or the elements of the statutes to which the officer referred, it is unclear how the district court determined that Ambriz violated a statute, thereby providing reasonable suspicion of a traffic code violation.[1]

---

[1] Even if we are required to examine the record to determine whether there was substantial evidence to support the district court's implicit finding that Ambriz committed a traffic code

4

The State may not argue on appeal to affirm the district court based on an argument that was never presented to the district court for consideration. *See Armstrong*, 158 Idaho at 368, 347 P.3d at 1029. Appellate courts are forums of review, not decision in the first instance. To assert in district court that Ambriz violated a traffic statute, without indicating what statute was violated or providing the elements of the statute, does not fairly include an argument on appeal that there was a violation of I.C. §§ 49-630(1) and 49-637(1). Here, the State provided testimony on Ambriz's driving behavior that the State believed violated a statute, but it did not identify a statute or the elements of a statute so the district court could determine whether Ambriz's behavior violated a statute. As such, the specific foundation for the State's argument was not raised before the district court. For example, if an officer testified a driver was speeding, there must be evidence of the speed limit for the district court to conclude the driver's speed violated that speed limit. This illustrates why the State must proffer either the specific statute or the elements of the statute in order to establish a factual basis justifying a traffic stop for a traffic violation. *See State v. Higgins*, 122 Idaho 590, 597, 836 P.2d 536, 543 (1992) (holding although more frequently cited for evidentiary questions, an objection on one ground will not preserve for appeal a separate and different basis for objection not raised before the trial court).

Nevertheless, where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Diaz*, 158 Idaho 629, 636, 349 P.3d 1220, 1227 (Ct. App. 2015). We can freely apply law to the facts as found by the district court if those facts are supported by substantial evidence. Idaho Code Section 49-637, in relevant part, provides:

> Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

Idaho Code Section 49-630(1) states with certain exceptions not relevant in this case, "[u]pon all highways of sufficient width a vehicle shall be driven upon the right half of the roadway . . . ."

---

violation, *see State v. Floyd*, 159 Idaho 370, 372, 360 P.3d 379, 381 (Ct. App. 2015), on the record before us, there is no substantial evidence to support an implicit finding that Ambriz committed a traffic code violation.

Here, because neither the statutes nor the elements of the statutes were identified in the district court, the court did not make sufficient, relevant factual findings for us to review the district court's decision. As noted above, although the district court made findings relative to Ambriz's driving, the district court did not make findings of fact relative to the elements of the statutes; for example, whether E. 16th Street contained clearly marked lanes for traffic or whether E. 16th Street was of sufficient width such that Ambriz did not need to drive in the gravel. As such, because the district court did not make sufficient findings of fact, this Court does not have a sufficient factual basis to analyze whether the district court correctly determined the officers reasonably suspected that Ambriz violated either I.C. §§ 49-630(1) and 49-637(1).[2]

**B.     The Officers Had Reasonable Suspicion That Ambriz Was Driving Under the Influence When Ambriz Drove Into the Gravel on the Right Side of the Road While Making a Left-Hand Turn and Made Quick, Jerky Movements Within His Lane**

Nonetheless, while committing a traffic violation may provide reasonable suspicion to justify a traffic stop, it is not the only basis upon which officers may initiate a traffic stop. Limited investigatory detentions are permissible when justified by an officer's reasonable, articulable suspicion that a person has committed, or is about to commit, a crime. *State v. Morgan*, 154 Idaho 109, 112, 294 P.3d 1121, 1124 (2013). "Thus there are two possible justifications for a traffic stop--the officer has reasonable suspicion that a driver has committed an offense, such as a traffic offense, or the officer has reasonable suspicion of other criminal activity, such as driving under the influence." *State v. Neal*, 159 Idaho 439, 442, 362 P.3d 514, 517 (2015). Here, even if the officers did not have reasonable suspicion that Ambriz committed a traffic violation, the officers still had reasonable suspicion that Ambriz was driving under the influence.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Where an officer claims a reasonable suspicion of criminal activity to justify a traffic stop, the reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The

---

[2]     Upon review of the record, there is no evidence indicating the road was of sufficient width or had clearly marked lanes. In fact, the officers' dash camera indicates E. 16th Street did not have clearly marked lanes.

reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Citing to *State v. Emory*, 119 Idaho 661, 809 P.2d 522 (Ct. App. 1991) and *Neal*, Ambriz argues that his driving into the gravel and making quick, jerky movement within his lane of travel falls within a range of normal driving behavior and, therefore, could not create reasonable suspicion of driving under the influence. The State argues the officers' observations of Ambriz driving into the gravel on the side of the road and making quick, jerky movements within his lane of travel provided reasonable suspicion of driving under the influence.

In *Emory*, this Court considered whether an officer had reasonable suspicion to stop Emory for driving under the influence. We explained that the evidence adduced by the officer "could just as easily be explained as conduct falling within the broad range of what can be described as normal driving behavior." *Emory*, 119 Idaho at 664, 809 P.2d at 525. In particular, the officer observed Emory's vehicle not move for five or six seconds after the light turned green; correctly proceed through another green light; and drive straight down a street, although close to parked cars. *Id.* at 662, 809 P.2d at 523. This Court held the officer did not observe any activity supporting a reasonable suspicion of driving under the influence. *Id.*

Conversely, in *Atkinson*, 128 Idaho at 560, 916 P.2d at 1285, the Court found the officer had reasonable suspicion of driving under the influence when the officer observed Atkinson's vehicle "twice in two blocks of travel veer to the left and touch or cross over the center line. After the second such movement to the left, the vehicle swerved back across its lane of travel and touched the fog line on the extreme right side of the traffic lane." *Id.* at 561, 916 P.2d 1286. The Court further acknowledged that "although Atkinson's vehicle never entirely left its lane of travel, this weaving pattern, with the vehicle three times touching the lines on edges of the lane, was not within the range of normal driving behavior and was an objective indication that the driver was impaired." *Id.*

The facts presented in this case are more like *Atkinson* than *Emory*. Unlike Emory who drove straight and stayed within his lane of travel, Ambriz went into the gravel on the right side of the road while making a left-hand turn and then made quick, jerky movements within his lane

7

of travel. While Ambriz's quick, jerky movements alone are not sufficient to provide reasonable suspicion of driving under the influence, *see Neal*, 159 Idaho 439, 362 P.3d 514, this Court has previously upheld lower courts' determinations that, when combined with other factors, weaving on the roadway provided reasonable suspicion of driving under the influence. *See State v. Flowers*, 131 Idaho 205, 953 P.2d 645 (Ct. App. 1998); *Atkinson*, 128 Idaho 559, 916 P.2d 1284; *State v. Waldie*, 126 Idaho 864, 893 P.2d 811 (Ct. App. 1995). Like *Atkinson*, Ambriz's driving into the gravel on the side of the road while making a left-hand turn and then immediately jerking within the lane of traffic are not within the range of normal driving behavior and are an objective indication that Ambriz was impaired. These two instances of concern provided the officers with reasonable suspicion that Ambriz was driving under the influence. As such, the district court correctly determined the officers had reasonable suspicion to stop Ambriz for driving under the influence.

## IV.

## CONCLUSION

The district court did not make sufficient findings of fact for this Court to determine whether Ambriz committed a traffic violation under I.C. §§ 49-630(1) and 49-637(1). Even if the officers did not have reasonable suspicion that Ambriz committed a traffic violation, under the totality of circumstances the officers had reasonable suspicion that Ambriz was driving under the influence. Therefore, the order of the district court denying Ambriz's motion to suppress evidence and judgment of conviction are affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.