MELANSON, Judge.
The State of Idaho appeals from the district court’s order granting Troy Edwin Liechty’s motion to suppress. For the reasons set forth below, we affirm.
I.
FACTS AND PROCEDURE
The following facts were revealed at the hearing on the motion to suppress. On the morning of March 15, 2010, a patrol officer observed a vehicle parked along the side of the road in a dirt lot. The vehicle, which belonged to Liechty, was facing a canal and the backyards of neighborhood homes. Concerned about the location of the vehicle in relation to the homes, the officer pulled his patrol ear into the dirt lot behind Liechty’s vehicle without activating the overhead lights or siren. The officer approached the parked vehicle on foot and noticed that a sleeping bag completely covered the vehicle’s rear window. The officer also observed that the passenger side window was partially covered by a shade screen. However, upon reaching the passenger window, the officer could see Liechty sitting in the driver’s seat. Liechty appeared to be holding something in his hand. The officer tapped on the passenger window, and Liechty leaned across the passenger seat to remove the window shade. At that moment, concerned for his safety and wanting to make sure Liechty did not have a *166 weapon in his hands, the officer opened Liechty’s passenger door.
Upon opening the door, the officer noticed that the object in Liechty’s hand was a small flashlight. Standing in the open passenger doorway, the officer asked Liechty what he was doing parked in the dirt lot and if Liechty had any identification or weapons in the vehicle. Liechty responded that there was a kitchen knife under the backseat. Once a second officer arrived, the officer ordered Liechty out of the vehicle and the second officer placed Liechty in handcuffs. The officer subsequently located the knife in Liechty’s vehicle, arrested Liechty for possession of a concealed weapon, and secured Liechty in his patrol ear. The second officer searched Liechty’s vehicle for additional weapons and discovered methamphetamine. Liechty was charged with possession of a controlled substance, I.C. § 37-2732(c), and concealing a dangerous weapon, I.C. §§ 18-3302(7) and (9). Prior to trial, Liechty filed a motion to suppress. The district court granted the motion, holding that Liechty was seized for purposes of the Fourth Amendment when the officer opened the ear door, stood in the open doorway, and questioned Liechty. The district court therefore determined that the seizure was unlawful because it was not supported by reasonable suspicion. The state appeals.
II.
STANDARD OF REVIEW
The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court’s findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. State v. Atkinson, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. State v. Valdez-Molina, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); State v. Schevers, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).
III.
ANALYSIS
The state argues that the district court’s conclusion that a seizure occurred was clearly erroneous. In its memorandum decision and order granting Liechty’s motion to suppress, the district court first found that, when the officer opened Liechty’s passenger door, the officer did so without consent. The district court went on to rule that, under the circumstances of this ease, Liechty was seized when the officer opened the car door and stood in the open doorway questioning Liechty because no reasonable person would feel free not to talk to a police officer in such a situation. In support of this ruling, the district court found that the officer placed himself in a position in the open passenger doorway that prevented Liechty from driving away. The district court additionally ruled that the officer did not possess a reasonable articulable suspicion that Liechty was engaged in criminal activity prior to opening the passenger door. Specifically, the district court stated that the only fact known to the officer at the time that he opened the door was the location of a legally parked car in broad daylight.
The state does not assert on appeal that reasonable suspicion existed to support a seizure of Liechty when the officer opened the passenger door and stood in the open doorway. Rather, the state challenges the district court’s conclusion that a seizure occurred in the first place. Specifically, the state argues that there was no evidence presented at the motion hearing to support the district court’s finding that the officer placed himself in a position in Liechty’s open passenger doorway that prevented Liechty from driving away. The state also argues that there was insufficient evidence to support the district court’s conclusion that a seizure occurred because Liechty did not allege that the officer's position in the open passenger dooiway communicated to Liechty that he was not free to leave. The state finally asserts that the officer’s presence in the doorway did not constitute a seizure because it did not communicate to Liechty that he *167 was detained. In the alternative, if this Court determines that a seizure took place, the state contends that suppression was not warranted based on the doctrines of attenuation and inevitable discovery.
Initially, we conclude that there was substantial evidence to support the district court’s finding that the officer placed himself in a position in Liechty’s open passenger doorway that prevented Liechty from driving away. At the hearing on the motion to suppress, Liechty testified that, when the officer opened the passenger door, the officer stood in the open doorway and began asking questions, “Face to face, pretty much.” The officer testified that, when he opened the passenger door, he could see the entire front passenger compartment, including the driver and passenger side. The officer also testified that, once Liechty admitted there was a knife in the vehicle, he maintained his position of contact with Liechty and did not move around the vehicle so he could watch Liechty while he waited for a second officer to arrive. The state also presented photographs of the vehicle and its location at the time of Liechty’s encounter with the officer. The photographs depict Lieehty’s vehicle parked in such a way that it was reasonable for the district court to infer that Liechty could not have pulled forward to terminate his conversation with the officer and could not have backed out of the dirt lot without causing possible injury to the officer standing in the open passenger doorway. The power to draw factual inferences was vested in the district court, and the record supports the district court’s reasonable conclusion that the officer placed himself in a position in Liechty’s open passenger doorway that prevented Liechty from driving away.
We note that a defendant’s subjective belief regarding whether he or she was free to leave during an encounter with the police is not controlling when determining whether a seizure has occurred. See State v. Nelson, 134 Idaho 675, 679, 8 P.3d 670, 674 (Ct.App.2000) (scope of Fourth Amendment protection does not vary with the state of mind of the individual being approached). The district court’s task is to determine, based on the totality of the circumstances, whether a reasonable person would feel free to decline to cooperate with police. Id. at 678-79, 8 P.3d at 673-74. Thus, Liechty’s lack of testimony that the officer’s position in the open passenger doorway communicated to Liechty that he was not free to leave does not render the district court’s conclusion that a seizure occurred erroneous.
We turn next to the state’s argument that the officer’s presence in the doorway did not constitute a seizure because it did not communicate to Liechty that he was detained. The Fourth Amendment to the United States Constitution and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889, 905 n. 16 (1968); State v. Jordan, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct.App.1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. State v. Fry, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct.App.1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions, or by putting forth questions if the individual is willing to listen. Florida v. Bostick, 501 U.S. 429, 434-35, 111 S.Ct. 2382, 2386-87, 115 L.Ed.2d 389, 398-99 (1991); Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323-24, 75 L.Ed.2d 229, 235-36 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. Royer, 460 U.S. at 498, 103 S.Ct. at 1324, 75 L.Ed.2d at 236-37. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. Fry, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. Id.
*168 The United States Supreme Court, in United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980) stated:
Examples of circumstances that might indicate seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.
Other circumstances that may indicate seizure include whether the officer used overhead emergency lights and whether the officer took action to block a vehicle’s exit route. State v. Willoughby, 147 Idaho 482, 487-88, 211 P.3d 91, 96-97 (2009); State v. Schmidt, 137 Idaho 301, 302-03, 47 P.3d 1271, 1272-73 (Ct.App.2002); Fry, 122 Idaho at 103, 831 P.2d at 945. However, the Fourth Amendment is not implicated where factors independent of police conduct prevent an individual from departing. State v. Nickel, 134 Idaho 610, 613, 7 P.3d 219, 222 (2000) (no seizure when police took possession of defendant’s expired temporary permit and the defendant was discouraged from driving away because of a dead-end road and muddy conditions); State v. Martinez, 136 Idaho 436, 441, 34 P.3d 1119, 1124 (Ct.App.2001) (no seizure when defendant’s movement was restricted by the inoperability of his car and he was hesitant to walk away leaving his disabled car with all his luggage).
Taking into account all of the surrounding circumstances, the critical inquiry when determining whether a seizure has occurred is whether a reasonable person would have felt free to disregard the police, decline the officer’s request, or otherwise terminate the encounter. State v. Zubizareta, 122 Idaho 823, 827-28, 839 P.2d 1237, 1241-42 (Ct.App.1992) (no seizure when officer walked up to a parked vehicle, tapped on the window, engaged defendant in conversation, and asked the defendant to turn off the ear’s motor; seizure occurred once officer asked the defendant to remain seated in the vehicle); Fry, 122 Idaho at 103, 831 P.2d at 945 (seizure occurred when a driver attempted to pull out of a parking space and one officer tapped on the driver’s window, asked what the driver was doing, and requested a driver’s license while another officer stood behind the vehicle, blocking the vehicle’s exit route); State v. Osborne, 121 Idaho 520, 524, 826 P.2d 481, 485 (Ct.App.1991) (no seizure when officers pulled in behind defendant’s vehicle and walked up to the vehicle parked on a public street; seizure occurred when officer asked to see the defendant’s driver’s license because he was legally obligated to comply with the officer’s request and the defendant could not have believed he was at liberty to go about his business and ignore the officer).
Here, as in Zubizareta and Osborne, no seizure occurred when the officer approached Liechty’s parked vehicle and tapped on his window. Further, the officer, without activating his overhead lights, approached Liechty’s vehicle alone, without a weapon drawn, and did not physically touch Liechty or use threatening language upon opening the passenger door. Therefore, the inquiry before us is whether, by opening and standing in Liechty’s passenger doorway to question Liechty, the officer showed authority such that a reasonable person would not have felt free to disregard the officer, decline the officer’s requests, or otherwise terminate the encounter.
We first note that the instant ease is unlike other cases where a driver rolls down his or her car window in response to an officer’s approach. In such cases, the encounter is consensual in nature because the level of coercion between the officer and the citizen is minimal. See Zubizareta, 122 Idaho at 827-28, 839 P.2d at 1241-42; Osborne, 121 Idaho at 524, 826 P.2d at 485. At that time, the driver has the option to decline to open the window to speak to the officer. However, when an officer approaches a vehicle and initiates questioning of a driver by opening the vehicle’s door without consent, instead of asking to speak to the person through the vehicle’s window, the level of coercion between the officer and the citizen is enhanced.
*169 We also note that, in determining whether a seizure occurred, the district court found, similar to Fry, the officer here placed himself in a position relative to the ear that prevented Liechty from driving away. As explained above, this finding was supported by substantial evidence, and whether the officer took action to block a vehicle’s exit route is an appropriate circumstance to take into account when determining whether a seizure occurred. Further, while acts independent of police conduct that prevent a person from leaving, such as a broken-down car or muddy road conditions, do not implicate the Fourth Amendment, the officer here deliberately placed himself in a position that prevented Liechty from leaving.[1] We also recognize, as did the district court, that the officer’s position inside the doorway, alone, did not constitute a seizure. However, the officer opened the passenger door without Liechty’s consent and immediately questioned Liechty as to what he was doing in the dirt lot and whether he had identification or weapons in the vehicle while the officer stood in the open passenger doorway blocking the vehicle’s exit route. This was a sufficient display of authority such that a reasonable person would not feel free to decline to speak to the officer and go about the person’s business. Taking into account all of the surrounding circumstances, the district court’s ruling that Liechty was seized at the time that the officer opened the passenger door and stood in the open doorway was not in error.
In the alternative, the state argues that the district court’s decision to exclude the methamphetamine discovered in the vehicle was in error because the methamphetamine was not acquired through the exploitation of the seizure. As a result, the state contends the attenuation and inevitable discovery doctrines apply as exceptions to the exclusionary rule. Liechty responds that the state failed to raise these arguments below. In State v. Bower, 135 Idaho 554, 558, 21 P.3d 491, 495 (Ct.App.2001), we held that an appellate court is not limited by the state’s particular Fourth Amendment argument below:
While prosecutors may customarily address some written or oral argument to the court presenting the State’s legal theories as to why the search or seizure was lawful, the prosecutor is not obligated to do so; nor is the trial court precluded from ruling that the evidence was lawfully acquired on a theory different from that advanced by the prosecutor. We have held that a court’s analysis of the constitutionality of a search is not circumscribed by the intent or belief of the officer at the scene regarding the reason or justification for the search. Similarly, the court is not limited by the prosecutor’s argument or the absence thereof.
(citations omitted). See also State v. Newman, 149 Idaho 596, 599 n. 1, 237 P.3d 1222, 1225 n. 1 (Ct.App.2010). The state asserts that it adequately raised the application of the exceptions to the exclusionary rule by asserting in response to Liechty’s motion to suppress that the methamphetamine evidence should not be excluded. The state argues that, therefore, it was not required to argue each particular exception below in order to assert such exceptions on appeal. Based on the rationale of Bower, we conclude that the state is not prohibited from raising such arguments on appeal.
The state first asserts that the causal chain between the seizure and the discovery of methamphetamine was sufficiently attenuated to dissipate the taint of the unlawful seizure. There are three factors for a court to consider when determining whether unlawful conduct has been adequately attenuated: (1) the elapsed time between the misconduct and the acquisition of the evidence; (2) the occurrence of intervening circumstances; and (3) the flagrancy and purpose of the improper law enforcement action. State v. Page, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004). In Page, an officer discovered an outstanding warrant for the defendant after unlawfully detaining him. This Court determined that the discovery of *170 the outstanding warrant was an intervening circumstance that allowed the officer to continue to detain and eventually arrest and search the defendant. Id. at 846-47, 103 P.3d at 459-60.
The state concedes that the time between the seizure and the discovery of methamphetamine was short. Regarding the second factor, the state asserts that the officer did not learn about the methamphetamine based on his seizure of Liechty. Rather, the state argues, Liechty’s clothing and the presence of women’s underwear and binoculars in the vehicle, coupled with the officer’s routine questions, were intervening circumstances that resulted in the discovery of the methamphetamine. Liechty’s seizure occurred from the moment that the officer opened the door, stood in the open passenger doorway, and began questioning Liechty. Liechty’s arrest led to the discovery of the methamphetamine, and his arrest was the direct result of questions posed by the officer while standing in the open passenger doorway. Liechty’s admission that there was a weapon in the vehicle was not the product of some other intervening circumstance, nor was there an arrest or search warrant that would have allowed for the search of Liechty’s vehicle despite the officer’s conduct. While we acknowledge that the officer did not appear to act flagrantly or with an improper purpose, we cannot conclude that the attenuation doctrine applies here.
The state also argues that the inevitable discovery doctrine is applicable. This Court described this doctrine in State v. Holman, 109 Idaho 382, 391-92, 707 P.2d 493, 502-03 (Ct.App.1985):
The doctrine of “inevitable discovery” relates to hypothetical independent sources. It has been narrowly enunciated and applied by the United States Supreme Court. In Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Court held that evidence concerning the location of a dead body would not be suppressed, even though the evidence had been obtained by improper questioning of the accused, because the police also had organized a thorough search of the area where the body lay and its eventual discovery was inevitable. In contrast, the record here discloses no such additional line of investigation by the sheriff. Rather, the state’s position appears simply to be that if the sheriff had not seized the truck improperly, he would have obtained an untainted identification from the witnesses. But this shallow truism does not invoke the doctrine of “inevitable discovery.” The doctrine “is not intended to swallow the exclusionary rule whole by substituting what the police should have done for what they really did.” State v. Cook, 106 Idaho 209, 226, 677 P.2d 522, 539 (Ct.App.1984) (opinion expressing views of Burnett, J., joined by Walters, C.J.).
Here, the state asserts that the officer would have had the same conversation with Liechty had the officer not opened the door to speak to Liechty and, therefore, nothing would have changed and the methamphetamine would have inevitably been discovered. As discussed by this Court in Holman, the issue before us is whether an additional line of investigation would have revealed the methamphetamine, not whether the evidence would have been discovered had the encounter between the officer and Liechty not occurred while the officer was standing in the open passenger doorway. Indeed, we decline to predict how such a conversation would have unfolded. The record does not disclose any additional line of investigation and, as a result, the inevitable discovery doctrine does not apply. Thus, the evidence of methamphetamine was properly excluded.
IV.
CONCLUSION
The record supports the district court’s finding that the officer placed himself in a position in Liechty’s open passenger doorway that prevented Liechty from driving away. In addition, the district court’s ruling that a seizure occurred when the officer opened the passenger door and stood in the open doorway was not in error. The doctrines of attenuation and inevitable discovery are inapplicable here. Accordingly, the district *171 court’s order granting Liechty’s motion to suppress is affirmed.
Judge GUTIERREZ Concurs.

. The state also contends that Liechty was unable to drive away because he had run out of gas, not because the officer impeded Liechty’s exit. Again, whether another factor independent of police conduct, such as an empty gas tank, contributed to Liechty’s ability to decline to cooperate with police is not dispositive for Fourth Amendment purposes.