**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42730**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Opinion No. 35 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: June 9, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| VICTOR GARCIA-RODRIGUEZ, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. Robert J. Elgee, District Judge.

Order granting motion to suppress, <u>vacated</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Sara B. Thomas, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for respondent. Maya P. Waldron argued.

_____

GRATTON, Judge

The State appeals from the district court's order granting Victor Garcia-Rodriguez's motion to suppress. For the reasons set forth below, we vacate and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

A police officer, following Garcia-Rodriguez as he exited a highway off-ramp, observed that his tires crossed the fog line for several seconds. The officer also observed that Garcia-Rodriguez activated his right and then left turn signals, deactivated his left turn signal, and then reactivated it to signal his left turn. The officer turned on his overhead lights and parked behind Garcia-Rodriguez as he pulled into a gas station parking space. The officer noticed a rental car sticker in the window of Garcia-Rodriguez's vehicle. Garcia-Rodriguez indicated to the officer that he did not speak English. He produced a Mexican consulate card, stated he did not have a

1

driver's license, and he could not locate registration or proof of insurance. He said the car belonged to a friend named Bill.

Dispatch could find no information on Garcia-Rodriguez. With the help of a gas station employee, the officer explained why he stopped Garcia-Rodriguez and asked for consent to search the vehicle. Garcia-Rodriguez consented to the search and said he was on his way to purchase a vehicle. In the center console, the officer found a zippered bag that contained approximately $10,000, in a variety of denominations, bundled with rubber bands. The officer restrained Garcia-Rodriguez in handcuffs, told him he was not under arrest, requested additional officers, and put Garcia-Rodriguez in the patrol vehicle. A rental agreement for the vehicle was located indicating it was rented by a Bill Walker and prohibiting other drivers.

A Spanish-speaking officer arrived, gave Garcia-Rodriguez *Miranda*[1] warnings, and learned that he was in the country illegally. Over an hour after the stop occurred, the officer arrested Garcia-Rodriguez for driving without a driver's license, searched him incident to the arrest, and found methamphetamine in his pocket.

The State charged Garcia-Rodriguez with trafficking in methamphetamine, Idaho Code § 37-2732B(a)(4)(A), and possession of paraphernalia, I.C. § 37-2734A. Garcia-Rodriguez filed a motion to suppress the methamphetamine found in his pocket. He claimed that the officer had no legal basis to stop him, unlawfully detained him, and had no right to arrest him for driving without a license. The district court granted the motion. The State timely appeals.

## II.

## ANALYSIS

The State argues the district court erred in holding Garcia-Rodriguez's traffic stop, arrest, search incident to arrest, and detention were unlawful. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

**A.     Reasonable Suspicion**

The State argues the district court erred in holding Garcia-Rodriguez's traffic stop was unlawful.  A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws.  *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998).  The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop.  *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999).  The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer.  *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training.  *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

The district court held Garcia-Rodriguez's "single incident of crossing the fog line" did not provide the officer with reasonable suspicion that Garcia-Rodriguez was driving the vehicle contrary to traffic laws.  In contrast, the State argues the officer had reasonable suspicion that Garcia-Rodriguez violated I.C. § 49-630(1) when Garcia-Rodriguez crossed the fog line.  The State relies on this Court's decision in *State v. Slater*, 136 Idaho 293, 32 P.3d 685 (Ct. App. 2001).  In *Slater*, the defendant's tires crossed the fog line on a highway on-ramp.  We stated:

> Idaho Code § 49-630(1) requires that a vehicle be driven on the right half of the roadway, except in certain circumstances that are not applicable in this case.  The "roadway" means that portion of a highway that is "improved, designed or ordinarily used for vehicular travel." [I.C. § 49-119(19)].  It does not include "sidewalks, shoulders, berms [or] rights-of-way." *Id.*  Accordingly, when [the officer] observed [the defendant's] tires cross the fog line, albeit fleetingly, [the officer] now possessed the requisite reasonable suspicion that [the defendant] had violated I.C. § 49-630[(1)] by driving on the shoulder of the highway, rather than on the "roadway."

*Id.* at 298, 32 P.3d at 690.  The State asserts this case is factually indistinguishable from *Slater*, and because we found the officer in *Slater* had reasonable suspicion, the defendant there violated I.C. § 49-630(1), we must find the officer here had reasonable suspicion that Garcia-Rodriguez violated I.C. § 49-630(1).

Garcia-Rodriguez argues the plain language of I.C. § 49-630(1) applies only to highways with two or more lanes. According to Garcia-Rodriguez, implicit in the requirement that drivers operate their vehicles "on the right half of the road way is the existence of a left half of the roadway--in other words, there must be two or more lanes running in opposite directions for I.C. § 49-630(1) to apply." Because Garcia-Rodriguez crossed the fog line "on a single-lane, one-way off-ramp," he asserts I.C. § 49-630(1) does not apply and the officer did not have reasonable suspicion that Garcia-Rodriguez was driving his vehicle contrary to traffic laws. We disagree.

In *Slater*, we stated that none of the exceptions of I.C. § 49-630(1) applied to highway on-ramps. Thus, in *Slater* we considered whether I.C. § 49-630(1) applied to highway on-ramps and concluded that it did. Because highway on-ramps and off-ramps are essentially the same, we see no reason to hold differently here. Thus, when the officer observed Garcia-Rodriguez drive across the fog line and onto the shoulder of the highway off-ramp, the officer had reasonable suspicion Garcia-Rodriguez violated I.C. § 49-630(1). Accordingly, the district court erred in holding the officer did not have reasonable suspicion that Garcia-Rodriguez was driving his vehicle contrary to traffic laws.

## B.      Probable Cause

The State next argues the district court erred in holding Garcia-Rodriguez's arrest, search incident to arrest, and detention were unlawful. Specifically, the State asserts the officer developed probable cause to believe Garcia-Rodriguez was driving without a driver's license almost immediately after stopping him. According to the State, this probable cause justified Garcia-Rodriguez's detention, arrest, and search incident to arrest.

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. A search incident to a valid arrest is among those exceptions and thus, does not violate the Fourth Amendment proscription against unreasonable searches. *State v. Moore*, 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct. App. 1996). Pursuant to this exception, the police may search an arrestee incident to a lawful custodial arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Moore*, 129 Idaho at 781, 932 P.2d at 904. Thus, the issue turns on whether the officer lawfully arrested Garcia-Rodriguez.

4

The district court held Garcia-Rodriguez's arrest was unlawful because it did not comply with I.C. § 49-1407. Driving without a driver's license is a misdemeanor offense. I.C. § 49-301(1), (7). Idaho Code § 49-1407 prevents an officer from arresting a driver for a misdemeanor offense unless the driver does not "furnish satisfactory evidence of identity" or "the officer has reasonable and probable grounds to believe the [driver] will disregard a written promise to appear in court." The court held Garcia-Rodriguez's Mexican consulate card was satisfactory evidence of identity, and the officer did not have reasonable and probable grounds to believe Garcia-Rodriguez would not honor a written promise to appear in court. Thus, the court held Garcia-Rodriguez's arrest was unlawful under I.C. § 49-1407 and suppressed the evidence resulting from the arrest.

The State claims the district court erred in holding Garcia-Rodriguez's arrest was unlawful and suppressing evidence based on the officer's violation of I.C. § 49-1407. Specifically, the State asserts police need only effect a constitutionally, not statutorily, lawful arrest to show reasonableness and avoid suppression of evidence resulting from an arrest. The State asserts an arrest is constitutionally lawful, regardless of whether the arrest complies with state statutes governing arrests, if an officer has probable cause to believe a person has committed any crime (including a misdemeanor) in the officer's presence. The State relies on *Virginia v. Moore*, 553 U.S. 164 (2008) (hereinafter "*Moore*") and *State v. Green*, 158 Idaho 884, 354 P.3d 446 (2015) for this assertion. According to the State, Garcia-Rodriguez's arrest was constitutionally lawful because the officer in this case had probable cause to believe Garcia-Rodriguez was driving without a driver's license, a misdemeanor, in his presence.

Garcia-Rodriguez asserts the State did not cite *Moore* or argue Garcia-Rodriguez's arrest was constitutionally lawful in the district court and therefore, did not preserve that argument for appeal. He bases this assertion on this Court's decision in *State v. Armstrong*, 158 Idaho 364, 347 P.3d 1025 (Ct. App. 2015). Garcia-Rodriguez also argues the officer did not have probable cause for the arrest because the circumstances allowing for arrest under I.C. § 49-1407 did not exist.

In response, the State asserts the district court made "an adverse ruling which forms the basis for the assignment of error," *State v. Barnes*, 133 Idaho 378, 384, 987 P.2d 290, 296 (1999), by determining the arrest did not comply with I.C. § 49-1407 and ordering suppression. Moreover, the State points out that Garcia-Rodriguez raised the issue in the district court of

5

whether the stop and search were constitutionally reasonable by requesting suppression. Finally, relying on this Court's decisions in *State v. Newman*, 149 Idaho 596, 237 P.3d 1222 (Ct. App. 2010) and *State v. Bower*, 135 Idaho 554, 21 P.3d 491 (Ct. App. 2001), the State argues that it was not required to articulate to the district court every legal theory of constitutionality for the arrest.

In *Armstrong*, a condition of the defendant's parole required that he waive certain Fourth Amendment rights by agreeing to "submit to a search of person or property . . . by any agent of [the State Board of Correction]." *Armstrong*, 158 Idaho at 366, 347 P.3d at 1027. A police officer searched the defendant's vehicle at the request of the defendant's parole officer and found stolen property. *Id.* The defendant moved to suppress the evidence, arguing that the terms of the waiver allowed only searches by parole officers, not police officers. *Id.* The district court agreed and suppressed the evidence. *Id.* The State moved for reconsideration, arguing a police officer acting under the direction of a parole officer was acting as an agent of the Board. *Id.* The court agreed and denied the defendant's motion to suppress. *Id.* The defendant appealed and without directly arguing the terms of the waiver, argued that the Board could not delegate its duty, under the Idaho Constitution, to control, direct, and manage parolees. *Id.* at 367, 347 P.3d at 1028. We held the defendant had not preserved that issue for appeal because "[a]ppellate court review is limited to the evidence, theories, and arguments that were presented below." *Id.*[2] We stated, "An objection on one ground will not preserve for appeal a separate and different basis for objection not raised before the trial court."[3] *Id.*

---

[2]    As noted, our standard of review leaves to the trial court the finding of relevant facts. The trial court generally makes findings based upon the evidence, theories, and arguments presented to it. Thus, caution must be exercised in attempting to apply law not argued to the trial court to findings made in the context of a different argument. In *Armstrong*, although holding that the Idaho Constitution issue was not preserved, we addressed the issue because of the likelihood of recurrence. We first reviewed the legal underpinnings of the constitutional nondelegation doctrine. While it may appear that the constitutional nondelegation doctrine is a purely legal question, we noted that the *facts* in the available record did not demonstrate an actual delegation. *State v. Armstrong*, 158 Idaho 364, 369-70, 347 P.3d 1025, 1030-31 (Ct. App. 2015).

[3]    *Armstrong* cited two Idaho Supreme Court decisions that are relevant here: *State v. Frederick*, 149 Idaho 509, 236 P.3d 1269 (2010) and *State v. Headley*, 130 Idaho 339, 941 P.2d 311 (1997).

In *Bower*, the defendant moved to suppress drugs found in plain view after paramedics and police entered his hotel room without a warrant to render medical assistance. *Bower*, 135 Idaho at 556, 21 P.3d at 493. The district court denied his motion, holding that exigent circumstances justified the warrantless search. *Id.* The defendant appealed, arguing the exigency had passed by the time police arrived. *Id.* at 557, 21 P.3d at 494. The State responded that police may follow emergency medical personnel who lawfully enter a residence in exigent circumstances. *Id.* The defendant asserted the State had not preserved that issue for appeal. *Id.* We stated that the defendant's position was untenable because, in ruling on motions to suppress, courts freely review the application of Fourth Amendment principles to the facts as found. *Id.* at 557-58, 21 P.3d at 494-95. Thus, the facts as found, but not the Fourth Amendment theories

---

In *Frederick*, the defendant argued to the trial court that the search of his vehicle incident to his arrest violated the United States and Idaho Constitutions because "it was not justified by concerns about safety or the possible destruction of evidence." *Frederick*, 149 Idaho at 512, 236 P.3d at 1272. On appeal, he argued that the Idaho Constitution affords greater protection than the Fourth Amendment. *Id.* at 513, 236 P.3d at 1273. Our Supreme Court has held that in order to find that the Idaho Constitution affords greater protection, the factors that must be demonstrated are the uniqueness of our state, constitution, and long-standing jurisprudence. *See State v. Donato*, 135 Idaho 469, 472, 20 P.3d 5, 8 (2001). Because the defendant's argument in the trial court only stated the search violated the Idaho Constitution but did not argue the Idaho Constitution affords greater protection than the Fourth Amendment, the Court held the defendant had not preserved the argument for appeal. *Frederick*, 149 Idaho at 513, 236 P.3d at 1273. The defendant also argued on appeal that the holding in *Arizona v. Gant*, 556 U.S. 332 (2009) invalidated the search. *Frederick*, 149 Idaho at 512-13, 236 P.3d at 1272-73. Similar to this case, *Gant* was decided after the trial court in *Frederick* denied the motion to suppress. Therefore, neither the trial court nor the parties had the benefit of *Gant* below. However, the Supreme Court applied the rule in *Gant* on appeal, held that the search of the vehicle violated the Fourth Amendment, and reversed the trial court's denial of Frederick's motion to suppress. *Id.* at 513-17, 236 P.3d at 1273-77.

In *Headley*, the defendant moved to suppress, arguing to the trial court that the arresting officer did not have probable cause to believe that Headley was driving without a license. *Headley*, 130 Idaho at 340, 941 P.2d at 312. However, on appeal, he argued his arrest was unlawful because it did not comply with I.C. § 49-1407. *Headley*, 130 Idaho at 340, 941 P.2d at 312. The Court held the defendant had not sufficiently raised the statutory argument before the trial court to preserve it for appeal. *Id.* We note that because the defendant did not argue his arrest was unlawful under I.C. § 49-1407 below, the trial court would not have made the necessary findings regarding the satisfaction of I.C. § 49-1407's requirements, i.e., whether the defendant furnished satisfactory evidence of identity or the officer had reasonable and probable grounds to believe the defendant would disregard a written promise to appear in court. *See Headley*, 130 Idaho at 340, 941 P.2d at 312. Thus, the defendant had not fully developed the record for consideration of his new argument by the Court on appeal.

7

advanced by the State, limit courts in holding a search or seizure was reasonable.  *Id.* at 558, 21 P.3d at 495.  In addition, we noted:

> [I]t must be remembered that the purpose of the exclusionary rule, which disallows the use of unconstitutionally obtained evidence at the trial of an accused, is to deter law enforcement officials from violating constitutional protections.  Use of the exclusionary rule imposes a price upon society in that it often enables the guilty to escape prosecution.  Therefore, the exclusionary rule should be employed only when there has *in fact been a violation of the defendant's constitutional rights*.

*Id.* (citations and footnotes omitted).

In *Newman*, the defendant appealed, arguing that *Gant*, issued after the trial court denied the motion to suppress, invalidated the warrantless search of his vehicle under the search incident to arrest exception to the warrant requirement.  *Newman*, 149 Idaho at 599, 237 P.3d at 1225.  On appeal, the State, acknowledging the rule in *Gant* as to the search incident to arrest exception, argued for application of the automobile and officer safety exceptions to the warrant requirement, which it had not argued below.  *Newman*, 149 Idaho at 599 n.1, 237 P.3d at 1225 n.1.  We held that in an appeal from an order granting or denying a motion to suppress, "this Court is not limited by the prosecutor's argument or the absence thereof." *Id.*  We stated, "The lawfulness of a search [or seizure] is to be determined by the court, based upon an objective assessment of the circumstances which confronted the officer at the time of the search [or seizure]." *Id.*[4]

As noted, Garcia-Rodriguez asserts that the State did not rely upon or argue the *Moore* (or *Green*) case in the district court and should not be able to do so here.  In this case, Garcia-Rodriguez filed a motion to suppress.[5]  The parties and the court took up and relied upon the

---

[4]     This Court has held similarly when the State appeals.  *See State v. Liechty*, 152 Idaho 163, 267 P.3d 1278 (Ct. App. 2011).  In *Liechty*, the State appealed, arguing exceptions to the exclusionary rule it had not argued below.  *Id.* at 169, 267 P.3d at 1284.  The State asserted it adequately raised the application of the exceptions by asserting below that the evidence should not be excluded.  *Id.*  The State argued, therefore, "it was not required to argue each particular exception below in order to assert such exceptions on appeal." *Id.*  We agreed based on the rationale of *Bower*.  *Liechty*, 152 Idaho at 169, 267 P.3d at 1284.

[5]     In *State v. Green*, 158 Idaho 884, 892, 354 P.3d 446, 454 (2015), the Idaho Supreme Court noted that "suppression of evidence is a court-created remedy to ensure compliance with constitutional standards, and it is not appropriate to extend that remedy to violations that are merely statutory."

8

applicability of the statute, I.C. § 49-1407. Garcia-Rodriguez argued that an arrest for driving without a valid license, which did not satisfy the statute, rendered the evidence obtained in a subsequent search subject to suppression, relying upon *State v. Foldesi*, 131 Idaho 778, 963 P.2d 1215 (Ct. App. 1998), which so holds. *See also State v. Brown*, 139 Idaho 707, 85 P.3d 683 (Ct. App. 2004). In this case, the State is asking this Court to consider, even though not argued below, subsequent United States and Idaho Supreme Court cases, *Moore* and *Green*, which the State asserts hold that a violation of the statute does not render the arrest illegal for Fourth Amendment purposes and therefore, suppression is inappropriate. Thus, unlike the cases discussed above in which we have addressed or refused to address matters not raised in the trial court, here we are simply asked to apply the correct law to the suppression issue--the legality of arrest for driving without a license--raised in the district court. As noted in *Green*, the appellate courts "exercise free review over whether a constitutional violation has taken place" in light of the facts found by the trial court. *Green*, 158 Idaho at 886, 354 P.3d at 448. Thus, we will consider the application of *Moore* and *Green*.

In *Moore*, the United States Supreme Court held an arrest is lawful under the United States Constitution "when an officer has probable cause to believe a person committed even a minor crime in his presence." *Moore*, 553 U.S. at 171. Thus, *Moore* held that a warrantless arrest based on probable cause, even where the arrest violates state law, does not offend Fourth Amendment principles. *Id*. If, after *Moore*, there remained any confusion in Idaho about whether an officer could affect a constitutionally lawful arrest for a misdemeanor committed in the officer's presence,[6] *Green* made it clear that such an arrest is lawful under both the United States and Idaho Constitutions. *Green*, 158 Idaho at 887-88, 354 P.3d at 449-50. In *Green*, our Supreme Court relied on *Moore* to hold an arrest for a misdemeanor committed in an officer's presence "was 'lawful' as far as complying with the Federal Constitution." *Green*, 158 Idaho at 887, 354 P.3d at 449. The *Green* Court went on to hold that "an officer who arrests a person for a misdemeanor offense committed in the officer's presence has made a reasonable seizure under

---

[6]     *See State v. Jones*, 151 Idaho 943, 265 P.3d 1155 (Ct. App. 2011). In *Jones*, the defendant argued that the Idaho Constitution provided greater protection than the Fourth Amendment and that *Foldesi* had continuing viability despite the holding in *Moore*. *Jones*, 151 Idaho at 945 n.1., 265 P.3d at 1157 n.1. We did not address the issue in *Jones*.

9

Article I, Section 17 of the Idaho Constitution," regardless of the officer's compliance with I.C. § 49-1407. *Green*, 158 Idaho at 887-88, 354 P.3d at 449-50.[7]

Here, the officer witnessed Garcia-Rodriguez driving and Garcia-Rodriguez admitted he did not have a driver's license. Thus, the officer had probable cause to believe Garcia-Rodriguez was driving without a driver's license, a misdemeanor, in his presence. Even if the officer did not have grounds to arrest Garcia-Rodriguez under I.C. § 49-1407, Garcia-Rodriguez's arrest was constitutionally lawful, and therefore, his search incident to that arrest was lawful. Therefore, the district court erred in holding Garcia-Rodriguez's arrest was unlawful and suppressing evidence resulting from the arrest based on the officer's violation of I.C. § 49-1407. While this conclusion leaves defendants without an adequate remedy for an officer's violation of I.C. § 49-1407, remedies for the violation of statutory law are for the legislature to provide. *Green*, 158 Idaho at 892, 354 P.3d at 454. Because we hold Garcia-Rodriguez's arrest was constitutionally lawful, we need not address his other arguments regarding his arrest.

We next consider whether Garcia-Rodriguez's detention was unreasonable and the suppression of evidence resulting from the expansion of the detention was warranted. The determination of whether an investigative detention is reasonable requires a dual inquiry-- whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the

---

[7]     Thus, in the context of a motion to suppress, the application of the arrest statute as in *Foldesi* and *Brown* is inappropriate after *Moore* and *Green*. While *Moore* was decided before the suppression motion in this case, and the State failed to direct the district court to this controlling law, *Green* was subsequently decided.

intrusion permitted will vary, to some extent, with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305.

The district court held that neither Garcia-Rodriguez's crossing of the fog line nor his admission he did not have a driver's license justified his detention beyond the time reasonably necessary to issue traffic citations for crossing the fog line and driving without a driver's license. Because the officer detained Garcia-Rodriguez well beyond that time, the court held Garcia-Rodriguez's detention was unreasonable and suppressed evidence resulting from the expansion of the detention.

The State argues the district court erred in holding Garcia-Rodriguez's detention was unreasonable and suppressing evidence resulting from the expansion of the detention. The State asserts an investigative detention that is longer than necessary to effectuate the purpose of the stop is reasonable if it is supported by probable cause for an arrest. According to the State, the officer developed probable cause to believe Garcia-Rodriguez was driving without a driver's license almost immediately after stopping him. Because this probable cause justified an arrest of Garcia-Rodriguez under *Moore* and *Green*, the State asserts that it also justified a detention of Garcia-Rodriguez beyond the time reasonably necessary to issue any traffic citations. Thus, the State argues Garcia-Rodriguez's detention was reasonable and evidence resulting from the expansion of the detention should not have been suppressed.

Garcia-Rodriguez asserts the State did not address his prolonged detention as an issue and therefore, waived its consideration. Moreover, Garcia-Rodriguez asserts his detention was unreasonable because it was longer than reasonably necessary to issue traffic citations for crossing the fog line and driving without a driver's license and there was no "legitimate reason to extend the length of the stop."

In response, the State asserts Garcia-Rodriguez's argument "fails to comprehend the difference between an investigative detention based on reasonable suspicion and an arrest based on probable cause." The State agrees that an investigative detention, based on reasonable suspicion, must not be longer than reasonably necessary to effectuate the purpose of the stop. However, the State argues that the officer's probable cause to believe Garcia-Rodriguez was driving without a driver's license arose before the officer expanded Garcia-Rodriguez's detention and therefore, justified the length of the detention. According to the State, even if the

11

length of the detention rendered it a de facto arrest, the officer's probable cause to believe Garcia-Rodriguez was driving without a driver's license justified such an arrest.

We agree with the State. In the de facto arrest context, both this Court and our Supreme Court have held that probable cause for an arrest justifies a detention that is more intrusive or longer than would be justified by reasonable suspicion. *See State v. Buti*, 131 Idaho 793, 964 P.2d 660 (1998); *State v. Middleton*, 114 Idaho 377, 757 P.2d 240 (Ct. App. 1988). An investigative detention becomes a de facto arrest if it is too intrusive or longer than reasonably necessary to effectuate the purpose of the stop. *See Buti*, 131 Idaho at 796-97, 964 P.2d at 663-64; *State v. Pannell*, 127 Idaho 420, 423, 901 P.2d 1321, 1324 (1995). In *Middleton*, the defendant argued a de facto arrest had occurred. *Middleton*, 114 Idaho at 380, 757 P.2d at 243. However, we held that even if a de facto arrest had occurred, it was lawful because "it was supported by probable cause." *Id.* Although the officers did not immediately arrest the defendant when they obtained probable cause, we noted, "The presence or absence of probable cause is determined by a court upon the objective evidence in the case, not upon an officer's subjective impression [of whether or not probable cause exists.]" *Id.* at 381, 757 P.2d at 244. Similarly, in *Buti* the defendant argued a de facto arrest had occurred. *Buti*, 131 Idaho at 796, 964 P.2d at 663. Our Supreme Court agreed with the defendant, but held that probable cause justified the arrest. *Id.* at 798, 964 P.2d at 665.

Here, the officer witnessed Garcia-Rodriguez driving and Garcia-Rodriguez admitted he did not have a driver's license. Thus, the objective evidence shows the officer had probable cause to believe Garcia-Rodriguez was driving without a driver's license. Although the officer did not immediately arrest Garcia-Rodriguez when the officer obtained probable cause and even told Garcia-Rodriguez he was not under arrest when he was handcuffed, the officer's subjective intent is irrelevant. Under *Moore* and *Green*, the officer's probable cause justified a full-scale arrest of Garcia-Rodriguez. Thus, it also justified a detention of Garcia-Rodriguez that was longer or more intrusive than would be justified by reasonable suspicion. Accordingly, we hold the district court erred in holding Garcia-Rodriguez's detention was unreasonable and suppressing evidence resulting from the expansion of the detention. The court's reasoning was based on the erroneous assumption that driving without a driver's license does not justify an arrest and therefore, an expanded detention. It does. Therefore, the detention was reasonable and the evidence resulting from the expansion of the detention should not have been suppressed.

12

Because we hold the officer's probable cause to believe Garcia-Rodriguez was driving without a license justified Garcia-Rodriguez's detention, we need not address Garcia-Rodriguez's other arguments regarding his detention.

## III.

## CONCLUSION

Garcia-Rodriguez's traffic stop, arrest, search incident to arrest, and detention were reasonable and constitutionally permissible. The district court's suppression order is vacated and the case is remanded for further proceedings.

Chief Judge MELANSON **CONCURS**.

Judge HUSKEY **DISSENTING.**

I dissent because I am unable to reconcile the majority's interpretation of the de novo standard of review in suppression cases with the general preservation of issue standard. On the one hand, we are not limited by the prosecutor's articulation of the argument or theory (or the absence thereof) and can apply any legal theory pursuant to *State v. Newman*, 149 Idaho 596, 237 P.3d 1222 (Ct. App. 2010) or *State v. Bower*, 135 Idaho 554, 21 P.3d 491 (Ct. App. 2001)[1]

---

[1] I find the holdings in *Bower* and *Newman* to be troubling. It is true the State must lay the factual basis to establish the exception to the warrant requirement that validates the warrantless search and subsequent seizure. However, once the factual basis is established, the State can simply say, "I am relying on each and every warrant exception for which there is a factual basis," and that is sufficient for appellate review of any or all bases on which the lower court's decision may be affirmed. *Bower* and *Newman* excuse the State from articulating any specific basis, leaving the defendant to guess which exceptions have been established. The defendant must then rebut all possible exceptions or risk failing to preserve the "issue" (or argument or theory) for appeal. This is logically inconsistent.

Similarly, pursuant to *Bower* and *Newman*, while the lower court must grant or deny the motion, it can do so without explaining or articulating upon which exception it is basing its grant or denial. The appellate courts will review the record to determine any possible basis to affirm (or in this case, reverse) the lower court's decision. If our review is limited to arguments or theories raised in the district court, we ensure the trial court has an opportunity to consider and resolve disputes at a time when the error can be prevented, mitigated, or cured. *See State v. Branigh*, 155 Idaho 404, 416, 313 P.3d 732, 744 (Ct. App. 2013); *State v. Adams*, 147 Idaho 857, 860, 216 P.3d 146, 150 (Ct. App. 2009). Moreover, the rationale of allowing the lower courts to decide the issue in the first instance has been a jurisprudential basis for limiting the scope of an appeal since 1867 and rightly so:

It is for the protection of inferior courts. It is manifestly unfair for a party to go into court and slumber, as it were, on [a] defense, take no exception to the ruling, present no point for the attention of the court, and seek to present [the] defense, that was never mooted before, to the judgment of the appellate court. Such a

whether or not it is even mentioned by the parties or the court in the first instance. On the other hand, even when a defendant mentions the general basis for a motion to suppress, his or her arguments on appeal are strictly limited by what was argued to the trial court.[2] This appears to run counter to the infrequently cited "what's sauce for the goose is sauce for the gander" legal maxim.

In this case, it is clear that the broad issue--whether Garcia-Rodriguez's arrest was constitutionally valid--was raised both in the district court and in this Court. "An issue is different if it is not substantially the same or does not sufficiently overlap with an issue raised before the trial court." *State v. Voss*, 152 Idaho 148, 150, 267 P.3d 735, 737 (Ct. App. 2011), (citing *State v. Sheahan*, 139 Idaho 267, 277-78, 77 P.3d 956, 966-67 (2003)). I agree with the majority's reasoning and conclusion that if we reach the substantive issue of whether the evidence should be suppressed, the district court's decision should be vacated. Quite simply, there was no constitutional violation and thus, no abridgment of any right for which a remedy is needed. However, the theory or argument that was raised and decided by the district court was whether the arrest was valid pursuant to Idaho Code § 49-1407. The State did not argue in the district court that the application of the statute was irrelevant or immaterial to the analysis of the constitutionality of the arrest or that there was a separate, constitutional basis for the arrest; those arguments were raised for the first time on appeal. And so, based on the language in *Armstrong*, *State v. Frederick*, 149 Idaho 509, 236 P.3d 1269 (2010), and *State v. Headley*, 130 Idaho 339, 941 P.2d 311 (1997), the specific argument has not been sufficiently preserved for review, and I would decline to address the issue and would affirm the district court's decision.

From my review, in the context of suppression issues, our appellate courts have inconsistently decided when an issue is sufficiently preserved for review. As noted in the majority opinion, there are two lines of cases: the *Bower-Newman* line, where the appellate court decided that although the theory or argument was not raised by the parties, it was nonetheless sufficiently preserved for purposes of appellate review, and the *Frederick-Headley-*

---

practice would destroy the purpose of an appeal and make the supreme court one for deciding questions of law in the first instance.

*State v. Armstrong*, 158 Idaho 364, 367, 347 P.3d 1025, 1028 (Ct. App. 2015).

[2]   *Armstrong*, 158 Idaho at 368, 347 P.3d at 1029.

14

*Armstrong* line, where the appellate courts held that although the general issue was raised in the district court, because the specific theory or argument was not raised below or addressed by the district court, it was not sufficiently preserved for appellate review. While these are not all the cases in these lines, they are representative of the Courts' disparate holdings.

In *Bower*, we affirmed the district court's denial of Bower's motion to suppress on a theory not raised in or addressed by the district court. *Bower*, 135 Idaho 554, 21 P.3d 491 (Ct. App. 2001). There, the district court denied the motion to suppress on the grounds that there were exigent circumstances that justified the police entry. *Id.* at 556, 21 P.3d at 493. On appeal, Bower argued the exigency had passed by the time the officers had entered the hotel room, and thus, the police entry was not justified. *Id.* at 557, 21 P.3d at 494. The State argued, for the first time on appeal, the police officers' entry into the hotel room could be an extension of the paramedics' entry. *Id.* We held:

> First, the overarching "issue" presented both to the trial court and on appeal was raised by Bower's motion, not by the State. That issue is whether the officers' entry into the motel room violated the Fourth Amendment. Second, the State was not obligated to notify Bower in advance of the hearing of each of the warrant exceptions the State deemed applicable nor to give him advance notice of all its legal arguments respecting those exceptions. When a defendant has demonstrated that a warrantless search or seizure occurred, it becomes the State's burden to prove through *presentation of evidence* that an exception to the warrant requirement applied.

*Id.* at 557-58, 21 P.3d at 494-95.

We also held the appellate courts were not limited by the prosecutor's argument or the absence thereof. *Id.* at 558, 21 P.3d at 495 (citing *State v. Shepherd*, 118 Idaho 121, 124, 795 P.2d 15, 18 (Ct. App. 1990)). Thus, where the broadly defining "issue" would benefit the State, the Court used that broad definition, rather than limiting its review to the actual argument or theory that was raised.

In *Newman*, the Court took a similar approach. There, the district court denied Newman's motion to suppress on the ground that the search of his vehicle was a valid search incident to arrest. *Newman*, 149 Idaho at 598, 237 P.3d at 1224. We affirmed on a ground different than was raised in or addressed by the district court--that the search was valid pursuant to the automobile exception to the warrant requirement. *Id.* at 601, 237 P.3d at 1227. In *Newman*, we noted:

During the proceedings below, the prosecutor did not argue the officer safety exception or the automobile exception to justify the search of Newman's vehicle. However, on appeal, this Court is not limited by the prosecutor's argument or the absence thereof. *See State v. Bower*, 135 Idaho 554, 558, 21 P.3d 491, 495 (Ct. App. 2001). Further, an officer's explanation for the search is not controlling. *State v. Shepherd*, 118 Idaho 121, 124, 795 P.2d 15, 18 (Ct. App. 1990). The lawfulness of a search is to be determined by the court, based upon an objective assessment of the circumstances which confronted the officer at the time of the search.

*Id.* at 599 n.1, 237 P.3d at 1225 n.1.

But in *Headley*, a case with the exact mirror image of the facts in this case, the Supreme Court held Headley's argument was not sufficiently preserved for review. *Headley*, 130 Idaho 339, 941 P.2d 311 (1997). In the district court, Headley challenged the arrest and subsequent search of his vehicle on the ground that the police lacked probable cause to arrest, but he did not argue the applicability of I.C. § 49-1407. *Headley*, 130 Idaho at 340, 941 P.3d at 312. On appeal, Headley argued the arrest was invalid pursuant to I.C. § 49-1407. *Headley*, 130 Idaho at 340, 941 P.3d at 312. The Supreme Court held that because the issue[3] was raised for the first time on appeal and was not fundamental error, it declined to review the issue. *Id.* at 341, 941 P.2d at 313. Thus, the Supreme Court defined the issue as the specific argument or theory that was decided in the lower court, not the more broadly stated challenge to the validity of the search. This result also favored the State, as it precluded review of Headley's claim. Notably, the Supreme Court did not mention or hold the record was factually inadequate for a review of the issue; it simply declined to address the issue.

In *Frederick*, the Supreme Court continued in a similar vein. *Frederick*, 149 Idaho 509, 236 P.3d 1269 (2010). There, in his motion to suppress, Frederick argued the search violated both the state and federal constitutions, but argued only the federal constitutional issues in the district court. *Id.* at 513, 236 P.3d at 1272. On appeal, Frederick argued the state constitutional grounds. *Id.* The Supreme Court noted:

Frederick has failed to preserve his *argument* that the search violated the state constitution. Frederick's motion to suppress did assert that the search of his

---

[3]    The use of the word "issue" here is interesting, as the only way Headley was raising a different issue on appeal is if the issue in the district court was whether the arrest was constitutionally valid, while arguing the issue on appeal was whether the arrest was statutorily valid. However, my read of *Headley* indicates the overarching issue was the validity of the arrest; whether the arrest violated the constitution or the statute were different theories or arguments used to challenge the validity of the arrest.

16

truck violated "Article I, Sections 13 and 17 of the Constitution of the State of Idaho." However, in his argument before the district court, Frederick made no mention of the state constitution. Frederick did make explicit reference to two Idaho cases, *State v. Foster*, 127 Idaho 723, 905 P.2d 1032 (Ct. App. 1995), and *State v. Harris*, 130 Idaho 444, 942 P.2d 568 (Ct. App. 1997), but neither of these cases mention the state constitution. Finally, the district court did not mention the state constitution in its oral ruling and only noted it in passing in its written order. Thus, Frederick's argument on appeal that the state constitution affords greater protection than the Fourth Amendment is not preserved.

*Id*. at 513, 236 P.3d at 1273 (emphasis added). Thus, it appears the Supreme Court tends to read the definition of "issue" much more narrowly and uses the term "issue" synonymously with the "argument" or "theory" that was argued when it precludes defendants from raising different "arguments" or "theories" on review than were raised in the lower court. If, as the majority holds, a de novo review requires the reviewing court to apply the relevant law, regardless of whether the argument or theory was raised below, there was no legal impediment to the *Frederick* Court deciding the issue, particularly where the claim was clearly made in the written motion.

More recently, however, this Court appears to have recognized the definitional distinction made by the Supreme Court between the "issue" and the "arguments" or "theories" supporting that issue, but again defined the relevant term for the State's benefit. In *Armstrong*, the defendant argued in the district court that the search unconstitutionally exceeded the scope of his Fourth Amendment waiver because it was conducted by police officers without his parole officer being present. *Id*. at 368, 347 P.3d at 1029. On appeal, Armstrong argued the search was unconstitutional because the parole officer could not delegate the board's duty to supervise parole and parolees, under Article X, Section 5 of the Idaho Constitution, to local law enforcement. *Id*. at 367, 347 P.3d at 1028. We held:

> Appellate court review is limited to the evidence, *theories*, and *arguments* that were presented below. *State v. Johnson*, 148 Idaho 664, 670, 227 P.3d 918, 924 (2010). Issues not raised below generally may not be considered for the first time on appeal. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated or the basis of the objection must be apparent from the context. I.R.E. 103(a)(1); *State v. Sheahan*, 139 Idaho 267, 277, 77 P.3d 956, 966 (2003).
>
> *Although Armstrong preserved for appeal the general objection to the search and argument that the search exceeded the scope of his Fourth Amendment waiver, he cannot argue more grounds for that challenge than were argued before the district court.*

17

*Id.* (emphasis added) (internal footnotes omitted).

The Court went on to note, "Even when a defendant mentions the general basis for a motion to suppress, his or her arguments on appeal are limited by what was *argued* to the trial court." *Id.* at 368, 347 P.3d at 1029 (emphasis added). In fact, we specifically noted:

> Armstrong may not allege to this Court that the district court's decision was in error based on an argument that was never presented to the district court for consideration. Appellate courts are forums of review, not decision in the first instance. Because Armstrong did not raise his constitutional argument before the district court, it was not preserved for appeal.

*Id.* Regardless of whether we chose to address the merits of the issue in *Armstrong* in dicta, our holding was clear: constitutional arguments not raised before lower courts are not preserved for appellate review. If Armstrong could not argue more grounds for the challenge to the search than were argued before the district court, why should the State be permitted to do so in this case?

Moreover, I respectfully disagree with the majority's summary of *Armstrong*. Nowhere in *Armstrong* does the Court indicate its conclusion was premised upon the reason that the "facts in the available record did not demonstrate an actual delegation." If there was an insufficient factual basis, the Court could not have come to any conclusion about the delegation issue, let alone the conclusion it did reach, which was: "This case does not involve the delegation of decision-making authority from one governmental branch to another; indeed, this case does not involve *any* delegation of decision-making authority whatsoever." *Id.* at 369, 347 P.3d at 1030.

Even if one could argue that a sufficient factual basis may not have been established in *Headley*, the issues in both *Frederick* and *Armstrong*, *supra*, were purely legal issues for which no additional factual basis was necessary to render a decision, and there was no logical explanation why, under the majority's reasoning, a de novo review would not have warranted reviewing the merits of the claims. Thus, it appears that whether the courts decide an issue has or has not been sufficiently preserved depends on the party appealing the case, but this does little to provide clarity to litigants or courts.

Despite the apparent disparity, these two lines of cases can be reconciled if two principles are applied equally to the parties, regardless of which party appeals: first, the specific argument or theory must have been presented to the lower court; and second, recognizing that while the appellate court can affirm a district court based on the "right result, wrong reason" theory, it cannot reverse a lower court under the non-existent "wrong result, different reason" theory.

18

Requiring the appellant to preserve specific arguments (as is required for evidentiary objections) permits the lower court to rule on the issue with which it is presented and allows the same standard to be universally applied regardless of which party ultimately appeals. This rule also clearly delineates what is properly preserved for appellate review, removing the requirement that the appellate court distinguish between "issues," or "arguments," or "theories."

Requiring the same specific argument or theory to be raised by the appellant both in the lower court and the reviewing court also clarifies the de novo review standard. A de novo review allows a lower court to be affirmed if there is any legal rationale supporting the district court's decision, hence the "right result, wrong theory" basis of affirming a lower court's ruling. However, a de novo review should not be the basis to allow a reviewing court to comb the record to identify and address arguments that could have been raised in the lower court, but were not. In this case, the majority is not affirming a district court on a legal theory different from the one argued or decided below; instead, it is reversing a district court, a proposition for which I believe there is little, if any support.

To the extent that the majority holds that in a suppression case, de novo review is a free review of any and all legal issues for which there is factual support, it appears neither the State nor the defense should be limited by either its arguments (or lack thereof) or its concessions (which could be problematic in the invited error context), so long as there is a factual basis to support any particular legal theory or argument. This standard will deprive many a lower court from ruling on arguments in the first instance. We may find ourselves deciding suppression issues rather than reviewing lower courts' decisions, an unappealing prospect both from a trial court and an appellate court perspective.

Because the theory or argument relied upon by the State on appeal was not presented to the district court, I find the issue was not sufficiently preserved for purposes of appeal and would decline to address the merits of the argument, thus affirming the district court's decision.